**MIDWEST PAYMENT SYSTEMS, INC. Plaintiff,**

**v.**

**CITIBANK FEDERAL SAVINGS BANK f/k/a Brookfield Federal Bank Savings, Defendant.**

**No. C–1–91–581.**

United States District Court, S.D. Ohio, W.D.

Aug. 31, 1992.

John Charles Greiner, Graydon, Head & Ritchey, Cincinnati, Ohio, for plaintiff.

William Kendall Flynn, Strauss & Troy, Cincinnati, Ohio, for defendant.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

SPIEGEL, District Judge.

This matter is before the Court on the Plaintiff Midwest Payment Systems, Inc.'s ("Midwest") Motion for Summary Judgment (doc. 6), the Defendant Citibank Federal Savings Bank's ("Citibank") Motion for Partial Summary Judgment (doc. 11), Citibank's Response (doc. 12), Midwest's

Reply (doc. 14), and Citibank's Reply (doc. 16).

## BACKGROUND

On October 7, 1987, Midwest and Brookfield Federal Bank for Savings ("Brookfield") entered into a contract. About eight months later, Midwest and Brookfield agreed to an addendum to the contract. As a result of a merger, Citibank assumed all of Brookfield's rights and obligations under the contract and the addendum.

Pursuant to the Midwest–Citibank contract, Midwest was required to provide a data processing service known as Electronic Funds Transfer ("EFT") for five years commencing on November 1, 1987. Under the addendum, Midwest was also required to provide data processing services known as CIRRUS Gateway Services for three years beginning on May 31, 1988. If neither party objected, the provisions in the addendum were to be automatically extended for an additional three years.

Under the contract, Midwest and Brookfield agreed that Midwest would be the exclusive provider of Midwest's EFT requirements. Plaintiff's Motion for Summary Judgment, doc. 6, ex. A.[1] Following Brookfield's merger with Citibank, representatives from Citibank and Midwest discussed a possible "buy out" of Citibank's obligations under the contract and the addendum. The talks between the two corporations were not successful, however. As a result, on July 14, 1991, Citibank began using other providers for the services which Midwest had the exclusive right to provide to Citibank under the Midwest–Citibank contract. Four days later, a Midwest Vice President wrote to Citibank that Citibank had breached the Midwest–Citibank contract, and appropriate remedies would be taken through litigation. Midwest brought suit eight days after this letter, seeking to enforce the liquidated damages remedy set forth in the contract. Plaintiff Midwest claims that under the liquidated damages provision, its damages total $290,980.08.

Citibank contends that Midwest is not entitled to damages. Citibank points to section 8 of its contract with Midwest:

(a) Default by Customer. Customer shall be in default under this Agreement upon the occurrence of any of the following events ("*Events of Default*"):

... (iii) In the event that customer is in default is in default of any terms or conditions of this Agreement ... whether by reason of its own action or inaction or that of another, and such default continues for 30 days after receipt of a notice from MPS [Midwest] describing such default or violation, unless within such 30 day period Customer either corrects the default or, in the opinion of MPS, initiates appropriate action to correct such default and thereafter diligently pursues to cure such default.

(b) Termination. Upon the occurrence of an Event for Default, MPS may at any time thereafter terminate this Agreement effective 60 days after notice of such termination is given by MPS to Customer. Termination of Customer for any reason shall not relieve Customer from any liability or obligation to MPS arising prior to such termination. In the event this Agreement is terminated by MPS other than at the end of the initial Term or any renewal period, Customer shall pay to MPS an amount equal to the average sum of the monthly billings payable by customer for the three calendar months immediately prior to the date of termination, multiplied by the number of months remaining during the then current term of this Agreement.

Citibank argues that Midwest did not properly notify Citibank of its default under the contract, after Citibank transferred its EFT requirements to another source.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment

---

1. The Plaintiff appears to have erred in numbering its exhibits. The Plaintiff's exhibits proceed A, B, C, D, A, B. We will consider the second A and B exhibits to be exhibits E and F. The Plaintiff also stated incorrectly that the *Loft v. Sibcy Cline Realtors* decision was attached to its Memorandum.

is whether there exists a "... genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether issues exist that should be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982).

The moving party "has the burden of showing *conclusively* that there exists no genuine issues as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.) (emphasis in original), *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). Moreover, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.* (quoting Rule 56(c), Fed.R.Civ.P.).

■ Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.* The Supreme Court elaborated upon this standard, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial....

*Id.* at 322, 106 S.Ct. at 2552. Summary judgment is not appropriate if a dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Nevertheless, conclusory allegations are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir.1990).

## DISCUSSION

In resolving the pending motion, this Court must consider a number of issues. We shall examine these in turn.

### Whether Citibank Repudiated the Contract

■ Midwest argues that Citibank repudiated the parties' contract. A contractual repudiation must be a clear and unequivocal refusal to perform by one of the parties. *See e.g., McDonald v. Bedford Datsun*, 59 Ohio App.3d 38, 40, 570 N.E.2d 299 (1989). Citibank admits that it began using another source for its EFT requirements, in violation of the Midwest–Citibank contract. Nevertheless, Citibank contends that it demonstrated a continued willingness to perform its obligations under the Midwest–Citibank contract by payment of monthly service charges.

■ In examining the over-all bargain between the parties, the payment of monthly service charges appears incidental to the contractual provision requiring that Midwest act as the exclusive provider of Citibank's EFT requirements. The monthly service charges were relatively small in comparison to the EFT charges. If a party refuses to substantially perform its side of the contract, that party is in breach. *Mobley v. New York Life Ins. Co.*, 295 U.S. 632, 55 S.Ct. 876, 79 L.Ed. 1621 (1935). The Restatement adds that a party has a legally cognizable interest when the other party has committed a material breach which "... so *substantially* impairs the value of the contract to the injured party at the time of the breach that it is just in the circumstances to allow him to recover damages based on all his remaining rights to performance." Restatement (Second) of Contracts § 243 (1979) (emphasis added); *see also* John D. Calamari and Joseph M. Perillo, *The Law of Contracts* § 12–3, at 459 (2d ed. 1977). In the case before the Court, Citibank may have complied with some of the contract specifications, but its transfer of its EFT requirements to anoth-

er source violated the heart of the deal between Midwest and Citibank. Thus, Citibank's actions substantially impaired the value of the Midwest–Citibank contract and constituted a repudiation of that contract.

### Whether Midwest Must Follow the Notice Requirements

Citibank next argues that Midwest's failure to follow the notice provisions in the contract precludes Midwest from recovering the liquidated damages set forth in the contract. The parties implicitly agree that Midwest did not comply with the notice requirements upon learning of Citibank's repudiation of their contract. However, the contract's notice provision was designed to allow a breaching party to cure any defect in its performance. This provision states that Citibank will be in default:

... unless within such 30 day period Customer either corrects the default or, in the opinion of MPS, initiates appropriate action to correct such default and thereafter diligently pursues to cure such default.

In the matter before the Court, Citibank gave no indication that it had any desire to cure its default. Citibank failed in its attempt to renegotiate its contract with Midwest and proceeded to disconnect Midwest's EFT service, completely violating the Midwest–Citibank contract.

Contract scholar Arthur Corbin has explained that:

[a] repudiation or other total breach by one party enables the other to get a judgment for damages or for restitution without performing acts that would otherwise have been conditions precedent.

4 Corbin, The Law of Contracts § 977, at 920 (1963); *see also Livi Steel, Inc. v. Bank One, Youngstown*, 65 Ohio App.3d 581, 584 N.E.2d 1267 (1989) (quoting Corbin); *see generally, The George Wiedemann Brewing Co. v. Maxwell*, 78 Ohio St. 54, 84 N.E. 595 (1908). Thus, Ohio courts have concluded that the "... renunciation of a contract by one of the parties constitutes a breach of contract which gives rise to a cause of action in damages, and in such a case, *notice*, demand, and tender are

waived." *Loft v. Sibcy–Cline Realtors*, Case No. C–880446, 1989 WESTLAW 149667, at *2 (Hamilton Cty. Dec. 13, 1989) (emphasis added); *Bagnoli v. Cleveland Trust Co.*, 84 Ohio App. 170, 79 N.E.2d 557 (1948). In essence, after repudiating the contract, Citibank cannot demand now that Midwest scrupulously adhere to the terms of the contract. *See Bu–Vi–Bar Petroleum Corp. v. Krow*, 40 F.2d 488, 490–91 (10th Cir.1930) (by its acts a party may waive the required performance of the other party); *Kopeyka v. Woodstrom*, 305 Ill. 69, 137 N.E. 137, 138 (1922) (the repudiation of the contract waived the necessity for strict compliance with the written notice provision).

Nevertheless, the parties' contract did specify that in the event of Citibank's nonperformance, Midwest would notify Citibank thirty days before taking action. The United States Court of Appeals for the Sixth Circuit has stated that:

[i]t is well established in Ohio contract law that a party must comply with all express conditions to be performed in case of breach before it can claim damages by reason of the breach. A right of action requiring notice as a condition precedent cannot be enforced unless the notice for has been given.

*Au Rustproofing Center, Inc. v. Gulf Oil Corp.*, 755 F.2d 1231 (6th Cir.1985) (citations omitted). However, in the case before the Court, the notice provision of the Midwest–Citibank contract simply is not applicable, given the facts of this case. Contract scholar E. Allan Farnsworth notes that:

... the purpose of requiring a period of time before termination is to give the party in breach an opportunity to cure, the likelihood that party will do so is particularly important in determining how long the injured party must wait before treating the breach as total.

E. Allan Farnsworth, 2 *Farnsworth on Contracts* § 8.18, at 449 (1990); *see also Wickahoney Sheep Co. v. Sewell*, 273 F.2d 767, 770 (9th Cir.1959) ("[t]he purpose of notice of default in the usual case is to give the party allegedly in default an opportuni-

ty to remedy the default and meet its obligation.... [therefore] notice in a prescribed manner is not required where a party has actual notice and has not suffered prejudice").

In the case before the Court, Farnsworth's reasoning behind notice provisions is explicitly stated in the Midwest–Citibank contract. The Midwest–Citibank contract provides that Midwest must give Citibank thirty days in order to allow Citibank to either correct its default or to initiate appropriate action to correct its default. However, there is no reason to require Midwest to give thirty days notice, based upon the facts before the Court. Clearly, Citibank had no intention to comply with the Midwest–Citibank contract with Midwest when it disconnected Midwest's EFT service. Citibank needed no notice that a breach had occurred, because its actions constituted a repudiation of the contract. Thus, we refuse to hold that Midwest was required to perform the futile act of notifying Citibank of Citibank's breach before Midwest can bring suit. *See Hartford Accident and Indem. Co. v. Armstrong,* 125 Ind.App. 606, 127 N.E.2d 347 (1955).

 Citibank contends that under the election of remedies doctrine, Midwest had three options after Citibank repudiated the contract: (1) treat the contract as rescinded and recover the costs of reasonable reliance; (2) keep the contract alive for the benefit of both parties; or, (3) treat the repudiation as putting an end to the contract for all purposes and sue for recovery. *See The Cleveland Co. v. Standard Amusement Co.,* 103 Ohio St. 382, 387–88, 133 N.E. 615, 616 (1921). However, the election of remedies doctrine is not at issue in the case before the Court. Contract scholar E. Allan Farnsworth has written that the election of remedies doctrine arises when "... an injured party ... will treat the breach as partial, rather than total, and then reconsiders and seeks to treat it as total." E. Allan Farnsworth, 2 *Farnsworth on Contracts* § 8.19, at 456–457 (1990). In the case before the Court, Midwest has never attempted to treat the breach as partial. Instead, Midwest has consistently sought the liquidated damages that it believes it is entitled to under the contract.

### The Measure of Damages

The Midwest–Citibank contract provides a liquidated damages remedy if Midwest is in default:

> Customer shall pay to MPS an amount equal to the average sum of the monthly billings payable by Customer for three (3) calendar months immediately prior to the date of termination, multiplied by the number of months remaining during the then current term of [the] Agreement. Customer shall also reimburse MPS for any damage, loss, or expense incurred by MPS as a result of a breach by Customer. All such amounts shall be due and payable by customer on the effective date of termination.

Citibank asserts that its damages under the liquidated damages provision total $280,980.08. Midwest derived this figure from taking the average sum of the monthly billings and revenue received for April, May, and June of 1991, and multiplying that number by the months remaining in the original contract and in the addendum. Finally, an additional $10,000 was included as a "deconversion fee."

Citibank argues that Midwest's damages should equal the present value of its future profits. The Ohio Supreme Court decided in *Allen, Heaton and McDonald, Inc. v. Castle Farm Amusement Co.,* 151 Ohio St. 522, 526, 86 N.E.2d 782, 784 (1949), that:

> [w]hen a plaintiff sues on a contract to recover the amount he would have received for the full performance prevented by defendant's breach, he seeks in effect to recover his damages and the profit from performance on the contract which profit defendant's breach prevented him from earning. In each case, the plaintiff has the burden of alleging and proving not only (a) what he would have received from performance so prevented, but also (b) what such performance would have cost him (or the value to him of relief therefrom).

*See also Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.,* 6 Ohio St.3d 436, 453 N.E.2d 683 (1983) (when a contract is repudiated, the savings to the injured party is deducted from the damages); *F. Enters., Inc. v. Kentucky Fried Chicken Corp.,* 47 Ohio St.2d 154, 351 N.E.2d 121 (1976) (same).

▮ Ohio law requires that a liquidated damages provision should be enforced, provided that: (1) the damages are difficult to ascertain; (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate as to justify the belief that the contract did not express the true intention of the parties; and, (3) the contract is consistent with the conclusion that the parties intended the liquidated damages to apply in the event of a breach. *Samson Sales, Inc. v. Honeywell, Inc.,* 12 Ohio St.3d 27, 465 N.E.2d 392 (1984).

▮ In the case before the Court, we recognize that the contracting parties were two sophisticated litigants. Thus, this Court's inclination is to apply the liquidated damages provision as stated in the contract. However, we believe questions of fact exist as to how the liquidated damages formula applies to the facts of this case.

Moreover, even if the parties agree on the formula, if the liquidated damages are "... manifestly inequitable and unrealistic, courts will ordinarily regard ... [them] as a penalty." *Id.* at 28, 465 N.E.2d at 393. Thus, we conclude that the amount of Midwest's damages is a question for the trier of the fact. *See Developers Diversified, Ltd. v. Graves,* Case No. 1131, 1985 WL 11125 (Ross Cty. Ct.App. June 18, 1985).

### CONCLUSION

Based upon the reasons discussed above, we grant the Plaintiff's Motion for Summary Judgment. However, the amount of the Plaintiff's damages is a question of fact to be determined at trial.

SO ORDERED.