**FIFTH THIRD BANK, Appellant,**

v.

**COOKER RESTAURANT CORPORATION, Appellee.**

[Cite as *Fifth Third Bank v. Cooker Restaurant Corp.* (2000), 137 Ohio App.3d 329.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C-990278.

Decided March 31, 2000.

*Graydon, Head & Ritchey* and *Michael A. Roberts*, for appellant.

*Aronoff, Rosen & Hunt, Gregory Mohar* and *Valerie Van Valkenburg*, for appellee.

---

*Per Curiam.*

Raising five assignments of error, plaintiff-appellant Fifth Third Bank appeals from the trial court's judgment for defendant-appellee Cooker Restaurant Corporation on Fifth Third's claim for liquidated damages and on Cooker's counterclaim for conversion, both based on the termination of a Bank Card Merchant Agreement drafted by Fifth Third and entered into by the parties in 1994. Because competent, credible evidence supports the trial court's decision that Cooker relied upon representations from Fifth Third concerning the means to terminate the agreement, and that there was no default upon which Fifth Third could invoke the liquidated-damages provisions of the agreement, we affirm the

judgment of the trial court. Any remaining errors in the trial court's weighing of the evidence are harmless.

Pursuant to the agreement, Fifth Third provided Cooker with credit-card processing services for its restaurants. Cooker received equipment and software from Fifth Third to process credit-card payments. The agreement provided that it remained in effect until "terminated by written notice [and that Cooker] may terminate this Agreement upon six (6) months prior written notice * * *." The agreement further provided for liquidated damages according to a formula based upon a twelve-month look-back period from termination.

In 1995, Cooker relocated its corporate offices from Ohio to Florida and began to reevaluate its need for credit-card services from Fifth Third. Unable to locate copies of the agreement, Cooker communicated with Fifth Third in 1996. Ultimately Cooker began to return the processing machines. By October 1996, Cooker had returned all the equipment to Fifth Third.

In January 1997, one Cooker restaurant accidentally reprogrammed its processing equipment and transmitted over $50,000 in payments to Fifth Third. In response to the payments, in March 1997, Fifth Third advised Cooker that its monies were being applied to "early termination fees" and demanded an additional payment to fulfill its calculation of over $112,000 in liquidated damages. Fifth Third's suit for breach of contract resulted, with Cooker counterclaiming that Fifth Third had converted the accidental payments.

Following the denial of motions for summary judgment, the matter was referred to a visiting judge for trial. Both parties waived their jury demands and proceeded to trial. After two days of testimony and lengthy arguments in which counsel endeavored to clarify the factual and legal issues raised by the evidence, the trial court, on March 23, 1999, issued an oral pronouncement indicating that it was entering judgment in favor of Cooker.

Two days later, Fifth Third filed a document captioned "Motion of Plaintiff for Reconsideration": "Pursuant to Civil Rule 54, [Fifth Third] moves the court for reconsideration of its March 23, 1999, interlocutory decision which has not yet been reduced to a judgment entry." After receiving Cooker's memorandum in response, the trial court held a hearing on the matter on March 30, 1999. Following extensive argument by the parties, the court journalized two documents. In the first, the trial court made factual findings and then denied Fifth Third's motion for reconsideration. In the second, the court purported to enter final judgment in the matter.[1]

---

1. The court's March 30, 1999 entry provides the following:

■ The record certified for our review reveals that on March 24, 1999, the day before Fifth Third's motion for reconsideration was filed, the trial court journalized a document declaring, "THE COURT FOUND IN FAVOR OF Defendant on its counterclaim IN THE AMOUNT OF $50,916.85 with interest from Feb 10, 1997 at 10% per annum. The Court found in favor of Defendant on Plaintiff's claim. Costs to plaintiff." The visiting judge who tried the case signed it and caused it to be entered on the court's journal. It included a mandate and an order from which an appeal would lie, as it affected a substantial right in an action and in effect determined the action. This entry was a "judgment" as defined by Civ.R. 54(A).

■ As the Ohio Supreme Court has held, and as this court has repeatedly noted, "The Ohio Rules of Civil Procedure do not prescribe motions for reconsideration after a final judgment in the trial court." *Pitts v. Dept. of Transp.* (1981), 67 Ohio St.2d 378, 21 O.O.3d 238, 423 N.E.2d 1105, syllabus. Therefore, all judgments flowing from such a motion for reconsideration are a nullity. See *id.* at 381, 21 O.O.3d 238, 423 N.E.2d at 1107; see, also, *Cincinnati Gas & Elec. v. Sinkfield* (Apr. 8, 1987), Hamilton App. No. C–860323, unreported, 1987 WL 9464. As we noted in *Ohio Bar Liab. Ins. Co. v. INA Underwriters Ins. Co.* (Nov. 7, 1990), Hamilton App. No. C–890651, unreported, 1990 WL 173456, where the first sentence of a trial court's initial entry orders that a judgment entry be presented by a named date, that first entry is an interlocutory order subject to modification before the entry of judgment. Here, as the only indication of the interlocutory nature of the March 24 entry is an oblique reference by the trial court in the transcript of the proceedings to the subsequent preparation of an entry, and as a court speaks only through its journal, see *State ex rel. Worcester v. Donnellon* (1990), 49 Ohio St.3d 117, 118, 551 N.E.2d 183, 184, the trial court's March 30 entries were made subsequent to a final judgment and are nullities.[2]

■ In its fourth assignment of error, Fifth Third claims that the trial court erred in concluding that after Cooker repudiated the agreement, Fifth Third was required to adhere to its provisions and give Cooker notice of default and an opportunity to cure the default. In a case involving a subsidiary of Fifth Third

"Having considered the evidence, exhibits, and arguments, the Court finds against [Fifth Third] on its First Amended Complaint. The Court further finds for [Cooker] on Count One of the First Amended Counterclaim for conversion. [Cooker's] remaining claims are dismissed.

"WHEREFORE, it is hereby ORDERED, ADJUDGED and DECREED that [Fifth Third] shall pay to [Cooker] the sum of $50,916.85, plus prejudgment interest in the amount of 10% per annum since February 10, 1997, post judgment interest at the statutory rate until paid, and court costs."

2. As Fifth Third filed a notice of appeal in the trial court within the thirty-day period prescribed by App.R. 4, there is no doubt that this court has jurisdiction to hear this appeal. See, also, *Kauder v. Kauder* (1974), 38 Ohio St.2d 265, 67 O.O.2d 333, 313 N.E.2d 797.

and interpreting, under Ohio law, an agreement quite similar to the one at issue here, the United States District Court held that, between two sophisticated business parties, a service provider was not required to follow the notice requirements of an agreement to enforce a liquidated-damages provision where the breaching party had no intention to comply with the agreement and thus needed no actual notice of breach. The court entered summary judgment in favor of the service provider on that issue. See *Midwest Payment Sys., Inc. v. Citibank Fed. Sav. Bank* (S.D.Ohio 1992), 801 F.Supp. 9, 14. But the court refused to enter judgment on the measure of damages as provided by the terms of the agreement because "how the liquidated damages formula applies to the facts of this case" was a question for the trier of fact. *Id.* at 15.

Here, the Fifth–Third–drafted agreement contained, as a condition precedent to obtaining liquidated damages, a requirement that Fifth Third give Cooker notice of default and a thirty-day opportunity to cure that default. The evidence adduced at trial, while often contradictory, established that in 1995, because of Cooker's move to Florida, it sought to ascertain its obligations under the agreement. When Cooker could not locate a copy of the agreement, its comptroller queried Fifth Third several times about the agreement. An employee of Cooker received representations from a Fifth Third officer that the agreement "must be expired or month-to-month," and that Cooker could terminate it by returning the credit-card processing equipment. Between June and August 1996, most of the processing equipment was returned to Fifth Third. But not until March 1997 did Fifth Third give notice of default and demand immediate payment of an additional $61,643.89 to satisfy the liquidated-damages provision. Fifth Third already held $50,916.85 in payments from Cooker mistakenly deposited in a Fifth Third account by one Cooker restaurant in January 1997.

Thus, there is some competent, credible evidence in the record to distinguish this matter from *Midwest Payment Systems.* Based upon that evidence, the trial court could have concluded that Cooker relied upon representations from Fifth Third concerning the means to terminate the agreement, that there was no default, and that its actions did not constitute a repudiation of the agreement upon which Fifth Third could invoke the liquidated-damages provisions of the agreement. An appellate court will not reverse a judgment of the trial court if it is supported by some competent, credible evidence going to all the essential elements of the case or defense. See *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614 N.E.2d 742; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. In a case such as this, where the evidence is confusing and often subject to more than one interpretation, we are guided by the principle that whether the case is "civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the

trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. The rationale underlying this deference is that "the trier of fact is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and to use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276. Therefore, the fourth assignment of error is overruled.

■ In its third assignment of error, Fifth Third claims that the trial court erred in granting Cooker's counterclaim for conversion. The assignment of error is overruled, as the record reveals some competent, credible evidence going to all the essential elements of the claim that Fifth Third's refusal to forward the $50,916.85 from the mistaken credit-card processing was an unauthorized exercise of dominion over personal property that was inconsistent with Cooker's rights. See *Welch v. Smith* (1998), 129 Ohio App.3d 224, 229, 717 N.E.2d 741, 744; see, also, *Myers v. Garson.* As Fifth Third was not entitled to recover liquidated damages without providing notice and an opportunity to cure, it was not authorized to claim the mistaken payment as setoff for its damages.

■ In three interrelated assignments of error, Fifth Third asserts that the trial court erred in concluding that Fifth Third had failed to prove that Cooker terminated the agreement, and that it had failed to prove the date of termination and the appropriate extent of liquidated damages.

A review of the trial court's oral pronouncement on March 23 reveals confusion on the issue of termination. For example, the court declared that "there has been no particular evidence that the contract was terminated." Yet it is beyond doubt from this record that by the end of 1996 both parties were acting as if the agreement had been terminated. Indeed, Cooker adduced evidence that it could end its obligation to perform under the agreement by returning the processing equipment. As urged in the second assignment of error, the trial court's pronouncement on termination was not supported by competent credible evidence. Nonetheless, as noted above in our treatment of the fourth assignment of error, the trial court's ruling that Fifth Third failed to comply with the conditions precedent and was not entitled to liquidated damages under the agreement rendered any error by the trial court on the date of termination harmless. See Civ.R. 61. The trial court's confusion on this factual issue did not affect Fifth Third's substantial rights.

The trial court's pronouncements that it was unable to determine when termination occurred and from what date to calculate the twelve-month look-back period were primarily factual determinations. See *Midwest Payment Systems, Inc. v. Citibank Fed. Savings Bank*, 801 F.Supp. at 15. But the trial court's

rulings in this respect, whether correct or not, were irrelevant to a resolution of this matter. The court's ultimate conclusion that Fifth Third had to establish an appropriate basis for invoking the liquidated-damages clause was supported by competent, credible evidence, thus obviating the need to determine the exact date of termination. Fifth Third's first, second, and third assignments of error are overruled.

Therefore, the judgment of the trial court is affirmed.

*Judgment affirmed.*

HILDEBRANDT, P.J., GORMAN and PAINTER, JJ., concur.