**[Cite as *Heartland Fed. Credit Union v. Horton*, 2013-Ohio-2931.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

HEARTLAND FEDERAL   :
CREDIT UNION   :

  :   Appellate Case No. 25412

    Plaintiff-Appellee   :

  :   Trial Court Case No. 2010-CV-3856

v.   :

  :

MATTHEW HORTON   :   (Civil Appeal from

  :    Common Pleas Court)

    Defendant-Appellant   :

  :

· · · · · · · · · · ·

O P I N I O N

Rendered on the 3rd day of July, 2013.

· · · · · · · · · · ·

BARRY W MANCZ, Atty. Reg. #0011857, Rogers & Greenberg, LLP, 2160 Kettering Tower, Dayton, Ohio 45423
    Attorney for Plaintiff-Appellee

GREGORY M. GANTT, Atty. Reg. 0064414, 130 West Second Street, Suite 310, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

· · · · · · · · · · · · ·

DONOFRIO, J.,

  **{¶1}** Defendant-appellant Matthew Horton appeals the decision of the Montgomery

County Common Pleas Court granting judgment in favor of plaintiff-appellee Heartland Federal

Credit Union on its conversion claim against him and awarding treble damages.

{¶2} From approximately November 2004 through April 2005, Heartland contracted with Corporate Construction Services, Inc. (CCS) for construction services on three different projects. Heartland dealt with Horton who was employed with CCS and was a 10% shareholder and vice president as well. Heartland directed payments intended for CCS's construction services to Horton, often making the checks payable to him. Horton deposited the money into his personal bank account.

{¶3} In March 2005, a receiver was appointed to control, manage, and liquidate the assets of CCS in Franklin County Common Pleas Court case no. 2007-CV-9488. The receiver sued Heartland on behalf of CCS to recover the money for the construction services rendered on the three projects (*Heartland I*). It was not until discovery in *Heartland I* that Heartland learned of Horton's conversion and misappropriation of the money it had paid him intended for CCS. Prior to trial, Heartland settled with the receiver for $25,000.00, incurring $27,096.75 in attorney fees in the process.

{¶4} On May 7, 2010, Heartland sued Horton for misappropriation and conversion in the Montgomery County Common Pleas Court. Horton subsequently filed a motion to dismiss on the basis of collateral estoppel, waiver, and res judicata. He argued that those doctrines barred Heartland's present lawsuit since it was a party to CCS's receivership litigation in *Heartland I* and he was in privity with CCS as 10% shareholder and vice president. The motion was later summarily overruled by the trial court.

{¶5} The matter proceeded to a trial before a magistrate on February 17, 2011. On April 21, 2011, the magistrate issued his decision finding that Horton had utilized the payments from Heartland for his own personal use causing Heartland to sustain damages of at least $62,056.70.

In addition to the $52,096.75 Heartland incurred in settling the lawsuit initiated against it by the court appointed receiver on behalf of CCS, the magistrate noted that Heartland had overpaid $9,959.95 on the third project due to an asphalt reduction. The magistrate also awarded treble damages for a total judgment in favor of Heartland and against Horton in the amount of $186,170.01. The magistrate also summarily rejected Horton's defenses of waiver, laches, estoppel, and res judicata, finding that none of those defenses was applicable to the facts of this case.

{¶6} Horton filed objections to the magistrate's decision without filing a concomitant transcript of the February 17, 2011 proceedings before the magistrate. The trial court remanded the case to the magistrate to address whether res judicata barred the present action based on what could have been litigated in *Heartland I*. The court also asked the court to clarify the award of the actual damages and explain why treble damages were appropriate.

{¶7} In response to the trial court's remand, the magistrate issued a follow-up decision on December 29, 2011. The magistrate clarified that the actual damages amount of $62,056.70 represented the $9,959.95 cost overrun on the third project plus the $25,000.00 Heartland settled with receiver in *Heartland I* and the $27,096.75 it incurred in attorney fees associated with that litigation. The magistrate found that Horton's actions were so egregious as to allow for treble damages. As for Horton's res judicata defense, the magistrate concluded that it did not apply to this case because *Heartland I* was settled and never proceeded to a valid final judgment.

{¶8} Horton filed objections to the magistrate's second decision which the trial court subsequently overruled on September 14, 2012. This appeal followed.

{¶9} Horton raises three assignments of error, the first of which states:

THE MAGISTRATE'S SECOND DECISION, ADOPTED BY THE COURT, DID NOT

SPECIFY WHICH CONVERTED SUMS REPRESENTED ACTUAL DAMAGES.

{¶10} Horton argues that particular and necessary factual findings were not made by the magistrate. Specifically, Horton argues that the magistrate's decision did not provide a finding of fact regarding any specific item that he is alleged to have converted. Further, Horton argues that there was no evidence that he specifically converted the $9,959.95 cost overrun and that it was impossible for him to convert the settlement amount and attorney fees Heartland paid in connection with *Heartland I* since he never had possession of those funds.

{¶11} On its face, the magistrate's decision soundly refutes Horton's argument concerning the absence of a finding of fact:

> The undersigned Magistrate further finds that as a result of the conversion, Heartland sustained damages in the amount of $9,959.95 with respect to the cost overrun on the [third project].

{¶12}As for Horton's argument that there was no evidence that he specifically converted the $9,959.95, Horton's deliberate inaction of not providing a transcript of the February 17, 2011 proceedings before the magistrate leaves this court with no option but to assume the regularity of the proceedings.

{¶13}As for the settlement amount and attorney fees, the magistrate did not find that those amounts had been converted. Rather, they were damages that Heartland incurred as a result of Horton's conversion of funds it had paid him for CCS's construction services.

{¶14}Accordingly, Horton's first assignment of error is without merit.

{¶15}Horton's second assignment of error states:

THE COURT WRONGFULLY APPLIED THE ISSUE OF PRIVITY FOR

HORTON REGARDING THE DEALINGS BETWEEN CCS AND HEARTLAND.

{¶16}This assignment of error concerns Horton's defense of res judicata. Because he was an officer and 10% shareholder of CCS, Horton had argued that Heartland's current lawsuit against him was barred by the doctrine of res judicata as Hearltand's conversion claim could have and should have been litigated in the receivership case (*Heartland I*).

{¶17}The magistrate rejected Horton's argument in this regard reasoning that since *Heartland I* had been settled prior to trial, it had not reached a final valid judgment for purposes of res judicata. However, in reviewing Horton's objections, the trial court correctly noted that the settlement operated as an adjudication upon the merits preventing any claim based on or including the same claim from being relitigated. However, the trial court concluded that res judicata still did not apply to bar Heartland's conversion claim against Horton because Horton lacked privity with CCS in *Heartland I*.

{¶18} "The doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel. * * * Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action. * * * Where a claim could have been litigated in the previous suit, claim preclusion also bars subsequent actions on that matter. * * *

{¶19} "Issue preclusion, on the other hand, serves to prevent relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies. * * * Issue preclusion applies even if the causes of action differ." (Citations omitted.) *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d

59, 61, 2007-Ohio-1102, 862 N.E.2d 803,¶ 6-7.

{¶20}In *O'Nesti,* the court noted that "[f]or claim preclusion to apply, the parties to the subsequent suit must either be the same or in privity with the parties to the original suit." (Citation omitted.) *Id.* at ¶ 9. The Court "considered whether employees of the same employer were in privity with each other for purposes of applying claim preclusion. Some employees of the DeBartolo Realty Corporation had obtained judgment against DeBartolo in 1999, based on DeBartolo's failure to distribute deferred stock following its merger with a subsidiary. 2007-Ohio-1102, ¶ 2, 113 Ohio St.3d 59, 862 N.E.2d 803. In 2003, two more employees sued, demanding their shares. The trial court rendered summary judgment in their favor, based on res judicata and collateral estoppel. *Id.* at ¶ 3, 862 N.E.2d 803. The court of appeals affirmed the decision of the trial court, holding that the employees were in privity with employees who had filed the earlier action, due to their mutuality of interests, including their shared employment and participation in the stock incentive plan. *Id.* at ¶ 4, 862 N.E.2d 803. The Supreme Court of Ohio then reversed, concluding that privity did not exist." *Buckeye Ret. Co., L.L.C., Ltd. v. Busch*, 2d Dist. Greene No. 2010-CA-51, 2011-Ohio-1125, ¶ 20.

{¶21} Concerning privity, the Court noted:

Privity was formerly found to exist only when a person succeeded to the interest of a party or had the right to control the proceedings or make a defense in the original proceeding. *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 114, 49 O.O.2d 435, 254 N.E.2d 10, overruled in part on other grounds, *Grava* [*v. Parkman Twp.* (1995)]*,* 73 Ohio St.3d 379, 653 N.E.2d 226. An interest in the

result of and active participation in the original lawsuit may also establish privity. Id. Individuals who raise identical legal claims and seek identical rather than individually tailored results may be in privity. *Brown v. Dayton* (2000), 89 Ohio St.3d 245, 248, 730 N.E.2d 958. This court has since stated that privity is a somewhat amorphous concept in the context of claim preclusion. *Kirkhart v. Keiper,* 101 Ohio St.3d 377, 2004-Ohio-1496, 805 N.E.2d 1089, ¶ 8, citing *Brown,* 89 Ohio St.3d at 248, 730 N.E.2d 958. A "mutuality of interest, including an identity of desired result," might also support a finding of privity. *Brown* at 248, 730 N.E.2d 958. Mutuality, however, exists only if "the person taking advantage of the judgment would have been bound by it had the result been the opposite. Conversely, a stranger to the prior judgment, being not bound thereby, is not entitled to rely upon its effect under the claim of *res judicata* or collateral estoppel." *Johnson's Island*[*, Inc. v. Danbury Twp. Bd. of Trustees* (1982)]*,* 69 Ohio St.2d [241,] 244, 23 O.O.3d 243, 431 N.E.2d 672.

*O'Nesti* at ¶ 9.

{¶22} Similar to *O'Nesti*, Horton's only commonality with *Heartland I* was that he was employed by CCS. As the trial court observed, Horton was a stranger to the contract litigation in *Heartland I* and did not participate in or have any control over that litigation. Nor was he bound by the terms of the settlement agreement. Due to his lack of privity, he cannot now rely on res judicata.

{¶23} Accordingly, Horton's second assignment of error is without merit.

{¶24} Horton's third assignment of error states:

THE ISSUE OF CONVERSION OF MONEY RAISED IN THE DEFENDANT'S

POST-TRIAL BRIEF WAS NEVER ADDRESSED.

{¶25} Under this assignment of error, Horton seems to argue that neither the magistrate nor the trial court addressed whether money can be the basis of liability for conversion.

{¶26} In his April 21, 2011 decision, the magistrate specifically discussed cases in which the unauthorized or wrongful exercise of dominion and control over money can be the basis of liability for conversion. In *Digital & Analog Design Corp. v. N. Supply Co.*, 44 Ohio St.3d 36, 540 N.E.2d 1358 (1989), Digital purchased telephone equipment from North Supply and paid with a check. However, North Supply applied the funds from the check to other outstanding obligations of Digital rather than to the telephone equipment purchase. A jury's verdict finding that North Supply had wrongfully converted those funds was upheld on appeal.

{¶27} In *Fifth Third Bank v. Cooker Rest. Corp.*, 137 Ohio App.3d 329, 738 N.E.2d 817 (1st Dist.2000), Cooker entered into a Bank Card Merchant Agreement with Fifth Third for it to provide credit-card processing services for its restaurants. Cooker relocated its headquarters and returned the credit-card processing equipment to Fifth Third. Meanwhile, one of Cooker's restaurants accidentally reprogrammed its processing equipment and transmitted over $50,000 in payments to Fifth Third. Fifth Third kept those funds and demanded more as liquidated damages for what it perceived as a breach of the Bank Card Merchant Agreement. Fifth Third sued Cooker for breach of contract and Cooker counterclaimed for conversion. The First District Court of Appeals affirmed a verdict in favor of Cooker on its claim for conversion.

{¶28} In its review of Horton's objections to the magistrate's April 21, 2011 decision, the trial court specifically acknowledged the magistrate's discussion of these cases and one additional related case. The court also noted the contrary authority cited by Horton in *Landskroner v. Landskroner*, 154 Ohio App.3d 471, 2003-Ohio-4945, 797 N.E.2d 1002 (8th

Dist.). Horton cites to *Landskroner* again on appeal for the proposition that money cannot serve as the basis of liability for conversion.

{¶29} Horton's reliance on *Landskroner* is misplaced. In *Landskroner*, father and son attorneys had entered into practice together. Subsequently, the son advised the father that he was ending their business relationship and vacated the office space they shared, taking with him all of the employees and business equipment. The father filed a lawsuit against the son which included a claim for conversion. The trial court dismissed the case and the Eighth District Court of Appeals affirmed.

{¶30} The Eighth District noted that "'existing law generally allows actions for conversion to be based only upon the taking of identifiable, tangible personal property.'" Id. at ¶ 27, citing *Wiltberger v. Davis*, 110 Ohio App.3d 46, 55, 673 N.E.2d 628 (10th Dist. 1996). The court then went on to find the father's conversion claim was "not identifiable, personal property but rather comprise[d] monies" the father claims were due and owing him under an agreement.

{¶31} The problem with the father's conversion claim was not that money was the basis of the claim. Rather, the difficulty arose from his inability to *identify* any money to which he was due. This stemmed from his failure to attach to the complaint any contract or agreement which might have specified the sums which he was due. In contrast, the money that was converted in *Digital* and *Fifth Third* was specifically identifiable.

{¶32} Accordingly, Horton's third assignment of error is without merit.

{¶33} The judgment of the trial court is hereby affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

(Hon. Gene Donofrio, Seventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Barry W. Mancz
Gregory M. Gantt
Hon. Dennis J. Langer