**WASTE MANAGEMENT, INC.,
et al., Plaintiffs,**

v.

**RICE DANIS INDUSTRIES
CORPORATION, et al.,
Defendants.**

**No. C–3–00–256.**

United States District Court,
S.D. Ohio,
Western Division.

March 18, 2003.

---

Constantine Dino Gianuglou, Gianuglou, Skilken & Replogle, Dayton, OH, Richard M. Sullivan, Edward F. Busch, Kenneth A. Bohnert, Jennifer Fust–Rutherford, Conliffe, Sandmann & Sullivan, Louisville, KY, for plaintiffs.

Thomas Thomsen Terp, Earl K. Messer, Daniel R. Warncke, Taft, Stettinius & Hollister, Cincinnati, OH, Gregory Louis McCann, Jr., James Alan Dyer, Toby K. Henderson, Sebaly Shillito & Dyer, Dayton, OH, Charles Rockwell Saxbe, Richard A. Frye, Karen S. Hockstad, Chester, Willcox & Saxbe, Columbus, OH, Jeffrey T. Cox, Faruki, Ireland & Cox, PLL, Dayton, OH, for defendants.

James Ralph Adams, Frost, Brown, Todd, LLC, Cincinnati, OH, for movant.

## DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING, WITHOUT PREJUDICE, IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. # 65)

RICE, Chief Judge.

The genesis of this litigation is the sale in 1983 by Defendant Danis Industries Corporation ("Danis") of some of its corporate subsidiaries to Plaintiffs.[1] One of those corporate subsidiaries was Industrial Waste Disposal Co., Inc. ("IWD"). At the time, IWD owned a corporate subsidiary named North Sanitary Landfill, Inc., which operated the North Sanitary or Valleycrest Landfill. Consequently, as a result of that transaction, the Plaintiffs became the operators of the Valleycrest Landfill.

After the 1983 sale of corporate subsidiaries to the Plaintiffs, Danis agreed to indemnify the Plaintiffs against certain liabilities arising out of the operation of the landfills owned by those subsidiaries, prior to the sale. Danis, thus, became obligated to indemnify Plaintiffs for liabilities incurred as a result of the operation of the Valleycrest Landfill by IWD's subsidiary prior to Danis' sale of IWD to Plaintiffs. After that Landfill had been included on the National Priorities List (*see* 40 C.F.R. Pt. 300, App. B), the possibility that Plaintiffs would incur liabilities, as a result of environmental contamination at the Landfill, became real. Consequently, Plaintiffs invoked the indemnification agreement with Danis, causing multiple lawsuits between the parties concerning Danis' obligation to indemnify the Plaintiffs. In December, 1997, the parties resolved their lawsuits by entering into a Settlement Agreement.[2] Under that agreement, Danis agreed to indemnify Plaintiffs. In this litigation, the Plaintiffs seek to recover from Danis, *inter alia*, on the basis of the indemnification provision in the Settlement Agreement set forth in ¶ 4 of that contract which provides:

4. *INDEMNIFICATION.* Subject to WASTE MANAGEMENT'S fulfillment of its obligations under this Agreement and except as specifically limited by Paragraph 9 entitled RESERVATION OF RIGHTS, DANIS hereby agrees to defend, indemnify and hold harmless WASTE MANAGEMENT from or against any Covered Claim or Covered Claims released by DANIS in Paragraph 3 herein. The indemnification shall continue in full force and effect for so long as DANIS or any entity shall have any obligation or alleged liability in connection with the [Valleycrest Landfill].[3]

Paragraph 2b of the Settlement Agreement defines "covered claim" to mean "any Claim that may arise from or is in any way related to the [Valleycrest Landfill], including, without limitation of the foregoing, Claims concerning environmental pollution, remediation, failure to remediate, toxic torts, natural resource damages, bodily injury, property damage and/or contractual indemnity." Paragraph 3 of the Settlement Agreement, which is referred to in the indemnification paragraph, provides:

---

1. The following recitation of circumstances giving rise to this litigation is set forth in the manner most favorable to Danis, the party against which summary judgment has been sought.

2. Copies of the Settlement Agreement are appended to the Plaintiffs' Motion for Summary Judgment (Doc. # 65), as Exhibit 2, and to Danis' Memorandum in Opposition (Doc. # 129), as Exhibit A.

3. The term "Waste Management" is defined by the Settlement Agreement to include both Plaintiffs in this litigation.

3. *MUTUAL RELEASE AND COVE-NANT NOT TO SUE.* Subject to Waste Management's fulfillment of Paragraph 6 entitled CONSIDERATION and Paragraph 13(e) entitled RESOLU-TION OF CLAIMS FOR INSUR-ANCE PROCEEDS and except as specifically limited by Paragraph 9 entitled RESERVATION OF RIGHTS, WASTE MANAGEMENT AND DANIS hereby release and covenant not to sue each other regarding any and all Covered Claims which have been or may hereafter be asserted against each other. The benefit of this MUTUAL RELEASE AND COVENANT NOT TO SUE extends to the Parties' parents, subsidiaries, affiliates, shareholders, directors, officers, employees, agents, successors and assigns.

Paragraph 9 of the Settlement Agreement, which is also referred to in ¶ 4, the indemnification paragraph, provides:

9. *RESERVATION OF RIGHTS.* Nothing in this Agreement is intended to be nor shall be construed as a release or covenant not to sue for any claim or cause of action, past or future, in law or in equity, which any of the Parties may have against the other for Non–Covered Claims or for any breach of the Agreement or the exercise of rights to enforce this Agreement.

In January, 1995, a group of potentially responsible parties ("PRPs") at the Valleycrest Landfill formed the Valleycrest Landfill Site Group ("VLSG") and entered into a Site Preparation Agreement, in order to facilitate remediation activities at that hazardous waste site and to allocate response costs among themselves. Neither Danis nor any of its affiliated corporations was a signatory to that agreement. In addition, the Plaintiffs were not among the PRPs participating in the Site Preparation Agreement. In May, 1998, those PRPs executed an Amended Site Preparation Agreement. Plaintiffs and Danis were signatories to the Amended Site Preparation Agreement. Under that amended agreement, Plaintiffs and Danis agreed that they would be collectively responsible for 46% of costs incurred by the signatories to that agreement to cleanup the Valleycrest Landfill. Plaintiffs and Danis also became members of the VLSG by entering into the Amended Site Preparation Agreement. In accordance with the Settlement Agreement between Plaintiffs and Danis, entered into in December, 1997, the latter is primarily liable to satisfy that collective obligation. In 1999, the Plaintiffs, along with Danis and other PRPs for the Valleycrest Landfill, entered into a Governmental Entity Participation Agreement for that Landfill, under which Danis and Plaintiffs reaffirmed the obligations they had undertaken in the Amended Site Preparation Agreement.

Beginning in 1996, Danis and its corporate affiliates underwent corporate restructuring, which the Plaintiffs refer to as a "recapitalization/split-off plan." Previously, Danis had been a wholly owned subsidiary of the Danis Companies ("TDC"). Danis Building Construction Company ("DBCC") was a wholly owned subsidiary of Danis Construction Company ("DCC"), which was a wholly owned subsidiary of Danis. When the plan was implemented, the assets of DBCC had been removed from TDC, Danis and DCC, and the shareholders of TDC were paid $26.5 million in exchange for their shares of stock of that corporation. As a result, Danis is without sufficient assets to satisfy its obligation to indemnify the Plaintiffs. Indeed, since October, 1999, Danis has refused to pay its and Plaintiffs' joint obligation, under the Amended Site Preparation Agreement, to pay 46% of the cost to remediate the Valleycrest Landfill, as it is required to do in accordance with the Settlement Agreement.

Plaintiffs bring this litigation against, among many others, Danis and Danis Environmental Management Company ("DEMCO"), which is alleged to be Danis' successor. In their First Amended Complaint (Doc. # 21), the Plaintiffs have set forth twelve claims for relief, to wit: breach of the Settlement Agreement by Danis, for failing to pay its share of the expenses for the cleanup of the Valleycrest Landfill (Count 1); breach of the Settlement Agreement by Danis, for failing to pay costs to defend a lawsuit brought by neighbors of the Valleycrest Landfill (Count 2); breach of the Amended Site Preparation Agreement and the Government Entity Participation Agreement for the Valleycrest Landfill (Count 3); declaratory judgment (Count 4); piercing the corporate veil (Count 5); CERCLA (Count 6); fraud and constructive fraud pertaining to the Settlement Agreement (Count 7); fraud and constructive fraud pertaining to the Amended Site Preparation Agreement and the Government Entity Participation Agreement (Count 8); negligent misrepresentation pertaining to the Amended Site Preparation Agreement and the Government Entity Participation Agreement (Count 9); fraudulent conveyance (Count 10); conveyance to hinder, delay or defraud creditors (Count 11); and civil conspiracy (Count 12).

This case is now before the Court on Plaintiffs' Motion for Partial Summary Judgment (Doc. # 65). With this motion, the Plaintiffs request summary judgment on their claims against Danis and DEMCO arising out of the Settlement Agreement. In particular, the Plaintiffs request that the Court declare that, in accordance with the terms of that document, Danis and DEMCO have the duty to defend and to indemnify the Plaintiffs for all liability and expenses arising out of the Valleycrest Landfill, including "1) $9,726,326.00 which Waste Management has paid to date for Valleycrest environmental costs and ex-penses, a $1,004,227.00 assessment for Valleycrest now due and all such future costs and expenses; 2) any liability Waste Management incurs[,] arising out of the Ohio state court action styled *Cathy Pitts, et al. v. North Sanitary Landfill, et al.*, Case No. [1999 cv] 5231 (Court of Common Pleas, Montgomery County, Ohio) known as the '*Pitts*' litigation; 3) all attorneys fees and costs plaintiffs have paid to establish their right to indemnity and [to] defend against Valleycrest liability; and 4) prejudgment interest at an annual rate of 10% on all sums owing by [Danis and DEMCO] to the date of final judgment." Doc. # 65 at 1–2. In addition, the Plaintiffs request that the Court enter final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. For reasons which follow, the Court sustains in part and overrules in part Plaintiffs' Motion for Partial Summary Judgment (Doc. # 65). In addition, the Court declines to enter final judgment pursuant to Rule 54(b). The Court begins its analysis, by setting forth the standards which are applicable to all motions for summary judgment.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.' " *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Wright, Miller & Kane, *Federal Practice and Procedure,* § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,*

953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

Under the Settlement Agreement between the Plaintiffs and Danis, the latter agreed to defend and to indemnify Plaintiffs for all "covered claims." As is indicated, that phrase is unambiguously defined by that agreement to include any claim relating in any manner to the Valleycrest Landfill, including claims concerning environmental pollution, remediation, failure to remediate, toxic torts, natural resources damages, bodily injury, property damage and/or contractual indemnity. With their Motion for Partial Summary Judgment (Doc. # 65), the Plaintiffs seek summary judgment that the Settlement Agreement obligated Danis to indemnify them. In particular, the Plaintiffs seek to recover $9,726,326.00, which they have paid to remediate the Valleycrest Landfill, and the $1,004,227.00, which represents an assessment for Valleycrest remediation, a total of $10,730,553.00.[4] According to the uncontradicted evidence presented by the Plaintiffs, those expenses arise out of the collective responsibility imposed upon Plaintiffs and Danis by the Amended Site Preparation Agreement.[5] It can not be disputed that expenses incurred by Plaintiffs to remediate the Valleycrest Landfill are "covered claims" and, thus, Danis is obligated by the Settlement Agreement to indemnify them for those expenses. Indeed, after the Plaintiffs and Danis had entered into the Amended Site Preparation Agreement, Danis, in accordance with the Settlement Agreement, initially paid its and Plaintiffs' collective responsibility under the Amended Site Preparation Agreement. In addition, Danis has not presented evidence challenging that the Plaintiffs have incurred $10,730,553.00 in costs in remediating the Valleycrest Landfill. Nevertheless, Danis raises a number of arguments as to why the Plaintiffs are not entitled to summary judgment on their claim that Danis is obligated to indemnify them. Each of those arguments requires that the Court examine provisions of the Settlement Agreement or the Amended Site Preparation Agreement, into which the Plaintiffs, Danis and other PRPs entered in order to remediate the Valleycrest Landfill. As a means of analysis, the Court will initially set forth the standards which must be applied when a court is called upon to interpret a contract, following which it will turn to the three argu-

---

**4.** Due to the fact that they have made additional payments since they filed their Motion for Summary Judgment (Doc. # 65), the Plaintiffs contend, in their Reply Memorandum (Doc. # 136), that they are now entitled to recover $15,188,370.00, rather than the sum of $10,730,553.00, which they requested with that motion. Since Danis has not had the opportunity to respond to the Plaintiffs' evidence relating to the greater sum, the Court will limit its ruling to Plaintiffs' request for summary judgment on the lesser sum of $10,730,553.00.

**5.** Danis does not challenge the amount of money Plaintiffs have spent to remediate the Valleycrest Landfill, nor does it contest that this sum arose out of the collective responsibility imposed upon Plaintiffs and Danis by the Amended Site Preparation Agreement. However, as is discussed below, Danis presents a number of reasons why it is not liable to the Plaintiffs.

ments presented by Danis, addressing them in the order presented.

■ In *Medical Billing, Inc. v. Medical Management Sciences, Inc.*, 212 F.3d 332 (6th Cir.2000), the Sixth Circuit reviewed the familiar standards which must be applied when a court interprets a contract under Ohio law: [6]

> Under Ohio law, if the language of a contract is clear and unambiguous, a court may not resort to construction of that language. *See Hybud Equip. Corp. v. Sphere Drake Ins. Co. Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1102 (1992), *cert. denied*, 507 U.S. 987, 113 S.Ct. 1585, 123 L.Ed.2d 152 (1993); *Karabin v. State Automobile Mut. Ins. Co.*, 10 Ohio St.3d 163, 167, 462 N.E.2d 403, 406 (1984). Only where the language of a contract is unclear or ambiguous or the circumstances surrounding the agreement endow the language with special meaning will extrinsic evidence be considered to give effect to the parties' intentions. *See Shifrin v. Forest City Enterprises., Inc.*, 64 Ohio St.3d 635, 597 N.E.2d 499, syllabus (1992). Words in a contract must be given their plain and ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall content of the document. *See Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146, syllabus ¶ 2 (1978).

*Id.* at 336–37. *See also, Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A contract is ambiguous when the meaning of a term cannot be determined from the four corners of the agreement or where contract language is susceptible of two or more reasonable interpretations. *United States Fidelity & Guaranty Co. v. St. Elizabeth Medical Center*, 129 Ohio App.3d 45, 716 N.E.2d 1201 (1998); *Affiliated FM Ins. v. Owens–Corning Fiberglas*, 16 F.3d 684, 686 (6th Cir.1994) (applying Ohio law); *Potti v. Duramed Pharmaceuticals, Inc.*, 938 F.2d 641, 647 (6th Cir.1991) (same). Of course, a contract must not be interpreted in a manner which leads to an absurd result. *See e.g., Livingston v. Fidelity & Deposit Co.*, 76 Ohio St. 253, 267, 81 N.E. 330 (1907); *Brannon v. Troutman*, 75 Ohio App.3d 233, 237, 598 N.E.2d 1333, 1336 (1992). In addition, a contract must be construed as a whole and the parties' intent ascertained from the entire instrument with every provision being given effect, rather than from its detached parts. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Authority*, 78 Ohio St.3d 353, 678 N.E.2d 519 (1997); *Tri–State Group, Inc. v. Ohio Edison Co.*, 151 Ohio App.3d 1, 782 N.E.2d 1240 (2002).

■ *First,* Danis argues that it is not obligated to indemnify Plaintiffs, because the indemnity provision in the Settlement Agreement, ¶ 4, expressly conditioned its duty in that regard upon Plaintiffs' fulfillment of their obligations under that agreement.[7] Danis points out that a central duty undertaken by the Plaintiffs in the Settlement Agreement was that set forth in ¶ 3, to wit: the release of and covenant

---

**6.** Both the Settlement Agreement and the Amended Site Preparation Agreement provide that it is to be interpreted in accordance with Ohio law. Since Ohio courts give effect to contractual choice of law provisions (*see e.g., Jarvis v. Ashland Oil, Inc.*, 17 Ohio St.3d 189, 478 N.E.2d 786 (1985)), this Court applies the substantive law of Ohio.

**7.** As is indicated, ¶ 4 provides that "[s]ubject to WASTE MANAGEMENT'S fulfillment of its obligations under this Agreement and except as specifically limited by Paragraph 9 entitled RESERVATION OF RIGHTS," Danis is obligated to indemnify the Plaintiffs.

not to sue Danis and its parents, affiliates, officers and directors. According to Danis, the Plaintiffs have breached that provision of the Settlement Agreement by bringing this litigation against Danis, its parent, an affiliate and its officers, Tom Danis and Greg McCann. In response, the Plaintiffs contend that Danis had materially breached its obligations under the Settlement Agreement, long before this litigation was initiated. Plaintiffs contend that, as a result, they were relieved of their responsibilities under the Settlement Agreement. Accordingly, Plaintiffs contend that, even if Danis' indemnification obligation was conditioned upon their release of and covenant not to sue Danis and its parents, affiliates, officers and directors, the initiation of this litigation did not relieve Danis of that obligation. For reasons which follow, this Court agrees with the Plaintiffs.

■ Under Ohio law, a non-breaching party to a contract is excused from complying with conditions of the contract, when the party for whose benefit the condition operates has already materially breached the contract. For instance, in *Midwest Payment Systems, Inc. v. Citibank Federal Savings Bank*, 801 F.Supp. 9 (S.D.Ohio 1992), Judge Spiegel applied Ohio law in a breach of contract dispute. Therein, the plaintiff and the defendant's predecessor had entered into a contract, under which the plaintiff agreed to perform data processing services for the defendant's predecessor. After the defendant had acquired the predecessor and taken over the contract, the defendant ceased using the plaintiff for data processing, which prompted the latter to initiate that action, alleging the defendant had breached the parties' contract. The defendant argued that the plaintiff's failure to comply with a condition precedent prevented it from recovering damages. Judge Spiegel disagreed, and, applying Ohio law, concluded that the plaintiff was

entitled to summary judgment, because the defendant had materially breached the contract prior to the time when the plaintiff was required to comply with the condition, thus relieving it of the obligation to do so. Judge Spiegel noted that, "after repudiating the contract, Citibank cannot demand now that Midwest scrupulously adhere to the terms of the contract." *Id.* at 13. In *Livi Steel, Inc. v. Bank One, Youngstown*, 65 Ohio App.3d 581, 584 N.E.2d 1267 (1989), the court applied the same legal principles in another breach of contract case. In particular, the *Livi Steel* court quoted the leading treatise on the law of contracts:

> As Corbin explains:
>> "A repudiation or other total breach by one party enables the other to get a judgment for damages or for restitution without performing acts that would otherwise have been conditions precedent. It is no longer necessary for the plaintiff to perform or to tender performance. This is true whether the repudiation is in express words or is by an act that makes performance by the repudiator apparently impossible or very improbable. If a vendor of land makes conveyance of it to a third party, it is not necessary for the buyer to tender the price before bringing suit."
>
> 5 Corbin, The Law of Contracts (1951) 920, 922, Section 977. *See, also, Wiedemann Brewing Co. v. Maxwell* (1908), 78 Ohio St. 54, 84 N.E. 595.

*Id.* at 585–86, 584 N.E.2d at 1269. This Court will follow the foregoing principles of Ohio law. Therefore, the Court must decide whether Danis had breached the parties' contract, prior to the Plaintiffs' initiation of this litigation, and whether that breach was material.

The uncontroverted evidence demonstrates that Danis had breached the Settle-

ment Agreement by failing to indemnify Plaintiffs for the parties' joint share of the cost of remediating the Valleycrest Landfill. For instance, in February, 2000, before this suit was initiated in May, 2000, Ron McSwiney, Senior Vice President and General Counsel for TDC, informed Plaintiffs' counsel that Danis could no longer afford to pay to remediate that site. In March, 2000, Danis informed the company retained by the VLSG to oversee work at the Valleycrest Landfill that it would not be able to make the payments for the first two quarters of 2000. Indeed, Danis has not made such a payment since October, 1999.

To determine whether a breach is material, Ohio courts have applied § 241 of the Restatement, Second, of the Law of Contracts. *See e.g., Russell v. Ohio Outdoor Advertising Corp.,* 122 Ohio App.3d 154, 157–58, 701 N.E.2d 417, 419 (1997) (and cases cited therein). Section 241 lists five factors which are considered to determine whether there has been a material breach:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Herein, an application of those factors leads to the firm conclusion that Danis materially breached the Settlement Agreement by failing to indemnify Plaintiffs. The first factor strongly favors the conclusion that Danis materially breached the Settlement Agreement, since the benefit which Plaintiffs were to obtain from the Settlement Agreement, Danis' obligation of indemnification, has been completely lost. Likewise, the second factor strongly favors holding that Danis is in material breach, since Plaintiffs could not enforce the indemnification provision, if this were not a material breach. One might argue that Danis will suffer a forfeiture if its breach is material, since, under that circumstance, Plaintiffs would be relieved of the condition that they release and covenant not to sue Danis and its parent, affiliate, directors and officers. Consequently, one might argue that the third factor supports the conclusion that Danis' breach of the Settlement Agreement was not material. This Court would disagree. The release and covenant not to sue were given to Danis as part of an agreement under which it agreed to indemnify Plaintiffs. Plaintiffs did not agree to release Danis absent its promise to indemnify them. In other words, Danis does not have a contractual right to the release and covenant not to sue which is independent of its obligation to indemnify Plaintiffs. Therefore, concluding that Danis' breach was material will not cause it to suffer the forfeiture of a right it otherwise would have had. With respect to the fourth factor, there is no evidence that Danis will indemnify in the future; therefore, this factor favors concluding that there was a material breach. Finally, with regard to the fifth factor, Danis' refusal to perform does not comport with the standards of good faith and fair dealing.

In sum, the Court concludes that Danis materially breached the Settlement Agreement, before this litigation was initiated. That relieved Plaintiffs of the condition imposed upon them by ¶ 4 of that agree-

ment. Accordingly, the Court rejects Danis' argument that it is not required to indemnify Plaintiffs, because they violated that condition by initiating this litigation.

■ *Second,* Danis argues that Plaintiffs are seeking indemnification for sums paid to third-parties, the VLSG, and that the Settlement Agreement does not impose on it the obligation of indemnifying Plaintiffs for such claims. As is indicated, Danis agreed in ¶ 4 of the Settlement Agreement to indemnify Plaintiffs "from or against any Covered Claim or Covered Claims released by DANIS in Paragraph 3 herein." Under ¶ 3, Danis released Plaintiffs for "any and all Covered Claims which have been or may hereafter be asserted against" them. Danis would have the Court interpret ¶¶ 3 and 4 of the Settlement Agreement to require that it indemnify Plaintiffs only for its claims against them which are related to the Valleycrest Landfill, rather than requiring that it indemnify claims by third-parties, such as claims for contribution by other PRPs (*i.e.*, the VLSG). Plaintiffs, in contrast, contend that the Settlement Agreement, construed as a whole, can be only interpreted as imposing upon Danis the obligation of indemnifying them for third-party claims. For reasons which follow, the Court agrees with Plaintiffs.

As an initial matter, it should be noted that the claims for which Plaintiffs seek indemnification constitute "covered claims," a term which is defined to include any claim which "may arise from or is in any way related to the [Valleycrest Landfill]." The Plaintiffs seek indemnification from Danis for the sum they have paid to remediate the Valleycrest Landfill, in ac-

cordance with the Amended Site Preparation Agreement. Thus, Plaintiffs seek indemnification for claims which are related to the Valleycrest Landfill.

Moreover, if this Court were to adopt Danis' interpretation of the Settlement Agreement, it would be required to ignore the rule of contract construction that a contract be interpreted as a whole and that all of its provisions be given effect. *See e.g., Foster Wheeler, supra.* For instance, construing the Settlement Agreement as not requiring Danis to indemnify Plaintiffs for claims of third-parties would result in this Court ignoring ¶ 7(a) of that contract, which provides:

> (a) Thirty days after the later of the signing of this Agreement and DANIS' receipt in full of $1,500,000.00, WASTE MANAGEMENT may notify the State of Ohio and all of the participating/cooperating Valleycrest potentially responsible parties in one or more writings whose text has been provided to DANIS no less than 15 days in advance and whose text both Parties agree reasonably characterize this Settlement Agreement and Mutual Release that WASTE MANAGEMENT is indemnified by Danis pursuant to the Settlement Agreement and that WASTE MANAGEMENT has been "cashed" out of [the Valleycrest Landfill].

It is difficult to imagine the purpose and meaning of ¶ 7(a), if, as Danis argues, it is not required to indemnify Plaintiffs for third-party claims, such as the obligations the parties undertook by entering into the Amended Site Preparation Agreement.[8]

Accordingly, the Court rejects Danis' assertion that the Settlement Agreement did

---

**8.** It should also be noted that the parties, by their course of performance, have treated Danis' obligation under the Settlement Agreement as extending to indemnifying Plaintiffs for their joint obligation under the Amended Site Preparation Agreement. Danis paid

nearly $5 million to the VLSG during 1998 and 1999, which represented the 46% share that the Plaintiffs and Danis undertook by entering into the Amended Site Preparation Agreement.

not impose upon it the obligation of indemnifying Plaintiffs for claims of third-parties, such as sums they jointly owe to the VLSG as a result of the Amended Site Preparation Agreement.

■ *Third,* Danis argues that Plaintiffs subsequently released it by entering into the Amended Site Preparation Agreement. Paragraph 22 of that agreement provides that all signatories, including Plaintiffs and Danis, agree to release all other signatories to it for all claims related to the Amended Site Preparation Agreement, except for, *inter alia,* claims expressly reserved by that agreement. That provision does not cause this Court to conclude that Plaintiffs released Danis from the obligation to indemnify it undertook by entering into the Settlement Agreement. In ¶ 6.1 of the Amended Site Preparation Agreement, the parties to that contract expressly provided that each member of the VLSG would retain its claims for contractual indemnification. In addition, ¶ 7(g) of the Settlement Agreement provides that Danis would exercise its best efforts to obtain a covenant not to sue from the other PRPs at the Valleycrest Landfill by entering into a settlement agreement with them, but that no such action by Danis can decrease its obligation to indemnify the Plaintiffs.

Accordingly, the Court sustains the Plaintiffs' Motion for Partial Summary Judgment (Doc. # 65), to the extent that Plaintiffs seek summary judgment on their claim against Danis that Danis is obligated to pay Plaintiffs the sum of $10,730,553.00 ($9,726,326.00 plus $1,004,227.00).

The Plaintiffs also request that the Court enter summary judgment on their claim that Danis is obligated to defend and to indemnify them on all "Valleycrest-related expenses or costs which arise or which [Plaintiffs] pay in the future." Doc. # 65 at 23. The Court will overrule this branch of the Plaintiffs' motion, since they have failed to define with specificity the types of costs and expenses for which they believe Danis is liable. Accordingly, the Court overrules the Plaintiffs' Motion for Partial Summary Judgment (Doc. # 65), without prejudice to renewal, to the extent that, with it, the Plaintiffs seek a declaration concerning Danis' liability for costs to remediate the Valleycrest Landfill in the future.

The Plaintiffs also seek summary judgment on their claim that Danis is obligated to defend and to indemnify them for expenses incurred in the *Pitts* litigation. The *Pitts* litigation is a lawsuit brought by the neighbors of the Valleycrest Landfill, against Plaintiffs and other PRPs, in order to recover damages they allege to have suffered as a result of the operation of that facility. After that lawsuit was filed, Danis paid for Plaintiffs' defense. Subsequently, Danis informed Plaintiffs that it would no longer pay for that defense; however, it has continued to do so. It could not be questioned that expenses incurred to defend and to indemnify Plaintiffs in the *Pitts* litigation come within the definition of "covered claims." Therefore, Danis is contractually obligated to defend and to indemnify Plaintiffs for costs they incur in that lawsuit. Accordingly, the Court sustains Plaintiffs' Motion for Summary Judgment (Doc. # 65), to the extent that they seek a declaration that Danis must defend and indemnify them for the *Pitts* litigation.[9]

---

**9.** It should be noted that the Court has previously rejected Danis' assertion that it is not obligated to indemnify Plaintiffs for third-party claims, such as expenses incurred to remediate the Valleycrest Landfill, pursuant to the Amended Site Participation Agreement. *See ——–——, supra.* That reasoning is equally applicable to the Plaintiffs' assertion that Danis' is obligated to provide a defense and indemnification for the *Pitts* lawsuit.

■ The Plaintiffs also seek summary judgment on their claim that Danis is contractually obligated by the Settlement Agreement to pay the attorney's fees they have incurred to enforce its obligation to indemnify them and the attorney's fees they have incurred as a result of the Government's administrative proceedings under CERCLA.[10] The Plaintiffs have not supported this branch of their motion with evidence establishing the amount and reasonableness of the fees they seek to recover. In the absence of such evidence, this Court is unable to enter summary judgment in favor of the Plaintiffs on their request for attorney's fees. Accordingly, the Court overrules the Plaintiffs' Motion for Partial Summary Judgment (Doc. # 65), without prejudice to renewal, to the extent that it relates to their claim for attorney's fees.

In addition, the Plaintiffs seek summary judgment on their claim that Danis is liable for prejudgment interest at the rate of 10% per year, in accordance with § 1343.03(A) of the Ohio Revised Code. The Plaintiffs request an award of prejudgment interest from the date that they made each payment, until the entry of final judgment.[11] The flaw in this branch of the Plaintiffs' motion is that they have failed to identify the dates upon which they made the various payments. In the absence of evidence establishing same, the Court is unable to grant summary judgment, indicating that the Plaintiffs are entitled to prejudgment interest on a particular sum from a particular date to the entry of final judgment. Accordingly, the Court overrules the Plaintiffs' Motion for Partial Summary Judgment (Doc. # 65), without prejudice to renewal, to the extent that it relates to their claim for prejudgment interest.

With their motion, the Plaintiffs also requested summary judgment against DEMCO. Above, the Court has discussed the liability of Danis, which entered into the Settlement Agreement with Plaintiffs. Although DEMCO is not a signatory to that agreement, it is the successor to Danis, by virtue of a merger between the two. Accordingly, the Court sustains the Plaintiffs' Motion for Partial Summary Judgment (Doc. # 65), to the extent that Plaintiffs seek summary judgment against DEMCO, to the same extent they have been granted summary judgment on their claims against Danis.

Finally, the Plaintiffs have requested that the Court enter final judgment in accordance with Rule 54(b) of the Federal Rules of Civil Procedure. Rule 54(b) permits a District Court to enter final judgment "as to one or more but fewer than all of the claims or parties." Herein, the Court declines to enter final judgement, because it has *not resolved any one* of the Plaintiffs' claims. Above, the Court has overruled the Plaintiffs' request for summary judgment on their claim for attorney's fees. That claim, like their request to recover $10,730,553.00 from Danis for remediation expenses, flows from the Settlement Agreement between the Plaintiffs and Danis. Attorney's fees, the request to recover that sum and the request for a declaration that Danis must indemnify them in the *Pitts* litigation are merely types of injuries the Plaintiffs may have suffered as a result of Danis' breach of the Settlement Agreement. They do not constitute separate claims. Moreover, the

---

**10.** Since the asserted obligation of Danis to pay Plaintiffs' attorney's fees arises from a contract between the parties, the issue must be resolved prior to the entry of final judgment, unlike instances where a party seeks such an award under a fee-shifting statute.

**11.** When the Court enters final judgment, the Plaintiffs will be entitled to post-judgment interest, computed in accordance with 28 U.S.C. § 1961.

Court has declined to enter summary judgment in favor of the Plaintiffs on the entire amount they have claimed in their Reply Memorandum, $15,188,370.00. *See* Footnote 4, *supra.*