[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 17-11165

————————————————

D.C.  Docket No. 5:15-cv-00144-JSM-PRL

CHARLES W. O'BRIEN, As Successor Trustee
of First Enterprise Trust,

Plaintiff -Appellant

versus

TRANSAMERICA PREMIER LIFE
INSURANCE COMPANY,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(August 22, 2018)

Before JORDAN and ROSENBAUM, Circuit Judges, and MARTINEZ,[*] District Judge.

PER CURIAM:

The plaintiff-appellant, Charles W. O'Brien ("O'Brien"), initiated this breach of contract action against defendant-appellee, Transamerica Premier Life Insurance Co. ("Transamerica"), seeking recovery under a "Death Benefit Rider" ("Rider") incorporated in an annuity contract issued to the Beth O'Brien Trust.

The district court granted Transamerica's motion for summary judgment and denied Mr. O'Brien's motion. The court concluded that the contract unambiguously excluded application of the Rider in instances where the annuitant died after annuitizing the contract, and thus found the Rider inapplicable to this case as a matter of law. O'Brien filed this appeal from the final summary judgment. For the reasons stated below, we affirm the judgment of the district court.

## I.    FACTS

On February 8, 1999, Peoples Benefit Life Insurance Co., the predecessor to Transamerica, issued a "Flexible Premium Multi-Funded Variable Annuity Contract" ("Contract") to the Beth O'Brien Trust, with Beth O'Brien designated as

---

[*]Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida, sitting by designation.

2

the annuitant.   The Contract, issued in Ohio, bore an original annuity date of December 1, 2008.

Ms. O'Brien designated the Trustee of First Enterprise Trust as the Contract's beneficiary.   Charles O'Brien, her son, is Successor Trustee of the First Enterprise Trust.  Ms. O'Brien made an initial purchase payment of $1,834,582.59 to acquire the annuity, which was administered through Vanguard Variable Annuity Plan ("Vanguard").   The Contract included and was simultaneously issued with a "Return of Premium Death Benefit Rider."   In relevant part, the Rider stated:

> **RETURN OF PREMIUM DEATH BENEFIT RIDER**
>
> This Rider has been made a permanent part of your contract.  This Rider adds a cost provision and a coverage provision that replaces the Death Benefit section of your Contract.  This Rider is issued in consideration of the Contract Owner's agreement to the changes below.
>
> **…..**
>
> **Death Benefit**
> This Rider replaces the "Death Benefit" section of your Contract with the following:
>
> The Death Benefit payable upon the death of the Annuitant
> will be the greater of:
> 1) The Accumulated Value of the Contract as of the date due Proof of
> Death of the Annuitant is received by the Company; or
> 2) The sum of all Premium Payments, less any Adjusted Partial
> Withdrawals and Premium Taxes, if any.

3

This Rider takes effect and expires concurrently with the Contract to which it is attached.

Ms. O'Brien elected to annuitize the Contract within a month of its issuance, and executed a Variable Annuity Election of Income Option to accomplish this purpose. She elected to begin receiving annuity payments on May 1, 1999, continuing for life, with a guaranteed pay-out term of ten years. Ms. O'Brien enjoyed the benefit of this guaranteed ten-year income stream (120 monthly payments) plus 50 additional monthly annuity payments paid up through the date of her death on May 5, 2013. After she died, Charles O'Brien made demand on Vanguard for payment of the "Death Benefit" described in the Rider. Vanguard denied the claim on the ground that the Contract's "Death Benefit" is payable only if the annuitant dies prior to the Contract's annuity date, a circumstance which did not materialize here. O'Brien then brought this breach of contract action against Transamerica seeking recovery of the "Death Benefit" described in the Rider.

Transamerica eventually filed a motion for summary judgment on the issue of the Rider's applicability to this case, and O'Brien's response in opposition to the motion was interpreted by the district court to include a cross-motion for summary judgment. The district court granted Transamerica's motion for summary judgment, denied O'Brien's motion, and entered final judgment accordingly. O'Brien filed this appeal from the final summary judgment.

4

## II.    STANDARD OF REVIEW

Our review of the district court's grant of summary judgment is *de novo*, and we apply the same legal standards as those used by the district court. *Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co*., 832 F.3d 1318 (11th Cir. 2016); *Hoffman v. Allied Corp*., 912 F.2d 1379, 1383 (11th Cir. 1990); *Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.,* 757 F.2d 1172 (11th Cir. 1985).

The interpretation of a contract is also a matter of law subject to *de novo* review. *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc*., 556 F.3d 1232 (11th Cir. 2009); *Seguros Del Estado, S.A. v. Sci. Games, Inc*., 262 F.3d 1164 (11th Cir. 2001) (contract interpretation without resort to parol evidence is question of law reviewed *de novo*).[1]

## III.    DISCUSSION

The district court found that the Rider, read in context of the Contract as a whole, has no application to instances where the designated annuitant dies after the annuity date.   The court found this interpretation was compelled by various provisions of the Contract describing the interplay between the annuity date and

---

[1] The question of which state's substantive law applies in this diversity action is a legal question entitled to independent review on appeal. *Am. Fam. Life Assurance Co. v. U.S. Fire Co*., 885 F.2d 826, 830 (11th Cir. 1989).   However, because the parties agree that Ohio law controls here, the Court will not conduct a choice of law analysis.

when a death benefit was due: First, a section captioned, "Death Benefit Prior to the Annuity Date," recites in pertinent part, "the Death Benefit is calculated and is payable upon receipt of due Proof of Death of the Annuitant,[2] as well as proof that the Annuitant died prior to the Annuity Date."[3] (R. 48-4). Second, a section captioned, "Annuitant's Death *Prior to* Annuity Date," refers to distribution of the death benefit "[i]f the Annuitant dies prior to the Annuity Date" (emphasis supplied), with the allocation depending on the survivorship and number of contract beneficiaries. Third, a section captioned, "Annuitant's Death *After* Annuity Date" (emphasis supplied) states "[i]f the Annuitant dies on or after the Annuity Date, any unpaid Payments Certain will be paid to the Beneficiary," and makes no reference to a Death Benefit.

Reading the Contract as a whole, the district court concluded that the Rider had no application here because Ms. O'Brien indisputably died after the "Annuity Date," i.e., the date on which she began receiving annuity payments. It further found that any "alleged ambiguity" created by the Rider's reference to

---

[2] "Annuitant" is defined in the Glossary of the contract as "[t]he person or persons on whose life expectancy the duration of any Annuity Payments is determined, and . . . upon whose death prior to the Annuity Date benefits under this Contract are paid." (R. 48-4)

[3] "Annuity Date" is defined in the Glossary as "[t]he date on which Annuity Payments begin." (R. 48-4).

6

"replace[ment]" of a non-existent section[4] of the underlying Contract was immaterial because, under any reasonable reading of the Contract, no "Death Benefit" is ever due if the annuitant dies after the annuity date.

On appeal, O'Brien argues that the Rider by its plain terms refers to a "Death Benefit" which is "payable upon the death of the Annuitant," without limitation as to whether the annuitant's death occurs before or after the annuity date. He argues the district court erred by misconstruing or disregarding the word "replaces," as it appears in the Rider, which, under its ordinary and plain meaning, refers simply to the substitution of one thing for another. Applying this definition here, he contends the Rider calls for the "replacement" of any provisions in the Contract which referred to a "Death Benefit," including those provisions relied upon by the district court in reaching its ultimate interpretation of the Contract.

Alternatively, O'Brien contends that the Rider's reference to the "replacement" of a non-existent section of the Contract created an ambiguity as to the circumstances under which the Rider was intended to apply, and that the district court should have interpreted this ambiguity against Transamerica as drafter of the Contract and Rider. At a minimum, O'Brien contends that the district court should have conducted an evidentiary hearing to consider extrinsic evidence of the parties' intent.

---

[4] While the Rider states it "replaces" the "Death Benefit section" of the Contract, there is no section of the Contract expressly titled a "Death Benefit" section.

Recognizing that "[t]he cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties," *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997), it is clear in this case that Transamerica performed exactly as the Contract contemplated with regard to payment of the "Death Benefit" described in the Rider.  In determining the intent of the parties, "a writing, or writings executed as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole."  *Id.* at 526.  Courts should therefore "attempt to harmonize all the provisions [of the contract] rather than produce conflict in them . . . [and] no provision of the contact should be ignored as inconsistent if there exists a reasonable interpretation which gives effect to both."  *Lincoln Elec. Co. v. St. Paul Fire and Marine Ins. Co.,* 210 F.3d 672, 685 (6th Cir. 2000) (quoting *Ottery v. Bland*, 536 N.E.2d 651, 654 (Ohio Ct. App. 1987)).

Contracts that are, by their terms, clear and unambiguous require no real construction or interpretation, and courts will enforce such contracts as written by the parties.  *See Foster Wheeler,* 678 N.E.2d at 526; *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978); *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.,* 525 F.3d 409 (6th Cir. 2008).  Conversely, where the court cannot decipher the parties' intent through the plain language of the

8

contract, a fact-finder may consider extrinsic evidence to resolve the ambiguity and ascertain the parties' intent. *See Shifrin v. Forest City Enters., Inc.*, 597 N.E.2d 499, 501 (Ohio 1992). Contract language is deemed ambiguous, however, "'only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations.'" *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (quoting *Covington v. Lucia*, 784 N.E.2d 186, 190 (Ohio Ct. App. 2003)). In deciding whether an ambiguity exists, the contract "'must be construed as a whole'" and the intent of the parties must be determined from the entire instrument and not from detached parts. *Id*. (quoting *Tri-State Grp., Inc. v. Ohio Edison Co.*, 782 N.E.2d 1240, 1246 (Ohio Ct. App. 2002)).

If primary rules of contract construction — plain language of the document and extrinsic evidence, in that order — fail to clarify the meaning of a contract term, then a secondary rule of contract construction, requiring ambiguous language in a standardized contract to be construed strictly against its drafter, comes into play. *Cadle v. D'Amico*, 66 N.E.3d 1184 (Ohio Ct. App. 2016).

Finally, common words in a contract are presumed to hold their ordinary meaning unless manifest absurdity results, or some other meaning is clearly evidenced from the instrument. *Waste Mgmt., Inc. v. Rice Danis Ind.,* 257 F. Supp. 2d 1076, 1083 (S.D. Ohio 2003) (citing *Buckeye Pipe Line Co.*, 374 N.E.2d at

150); *Crosier v. Ohio Dept. of Rehab. & Corr.*, 2018 WL 1168385, ___ N.E.3d ___ (Ohio Ct. App. Mar. 6, 2018) (citing *Plaza Dev. Co. v. W. Cooper Enters., LLC*, 12 N.E.3d 506 (Ohio Ct. App. 2014)); *Kenney v. Chesapeake*, 31 N.E.3d 136 (Ohio Ct. App. 2015).

In this case, the only reasonable interpretation of the Contract, viewing the Contract as a whole, is that the Rider replaced the "Death Benefit Prior to the Annuity Date" section of the Contract. First, the text and structure of the Rider mirrors the text and structure of the "Death Benefit Prior to the Annuity Date" section. For example, the Rider and the "Death Benefit Prior to the Annuity Date" section both have two subsections and use the exact same language, differing slightly on only a few items. In addition to the similarity between the text and structure of this section of the Contract and the Rider, it is important to note that the Rider states that it "replaces the Death Benefit" section of the Contract. Although Plaintiff is right that the Contract lacks a section titled "Death Benefit," the "Death Benefit Prior to the Annuity Date" is the only section of the Contract that has "Death Benefit" in its title whatsoever. Furthermore, the Rider and the "Death Benefit Prior to the Annuity Date" are aimed at the same issue: they both govern the valuation of the Death Benefit, with both providing for the greater of the Accumulated Value of the Contract, or, in the alternative, the sum of all premium payments.

10

Moreover, the other two sections of the Contract dealing with the annuitant's death and what payments, if any, are due limit the reach of the otherwise-uninhibited Rider. Indeed, the language from the "Annuitant's Death Prior to Annuity Date" section, which limits the Death Benefit to a situation where the annuitant died before annuitizing the Contract, and the language from the "Annuitant's Death After Annuity Date" section, which limits after-death, after-annuitized benefits to any remaining guaranteed annuity payments, clearly limit what payments are due upon Ms. O'Brien's death. And since Ms. O'Brien had already annuitized the Contract and thereafter received all of her guaranteed annuity payments, no further payments were due upon her death. *See Fifth Third Mortg. Co. v. Rankin*, 2011 WL 2206629, *5 (Ohio Ct. App. 2011) (declining to adopt a reading of a rider which would, "in essence, create a new contract").

Last, to interpret the Contract otherwise, as urged by O'Brien, would effectively amount to a double recovery under the Contract. It would allow recovery of the death benefit upon passing of the annuitant under any sequence and would lead to the commercially unreasonable result of allowing an annuitant to reap the benefit of his or her bargain twice — once by collecting the guaranteed ten-year annuity stream during his or her lifetime and again by conferring a death benefit on his or her designated beneficiary at the expiration of that lifetime. The Contract, read as a whole, does not support this result.

11

In determining the intent of the parties, the Court has harmonized all the provisions of the Contract to reach the only *reasonable interpretation* of the Contract.  And because the meaning of the Rider can be determined from the four corners of the Contract and because the language of the Rider is susceptible to only one *reasonable* interpretation, no ambiguity exists. This correct, global reading and harmonization of the Contract's terms leads to the conclusion that the parties intended to confer a death benefit only in those circumstances where the annuitant dies before the annuity date.

The district court's grant of summary judgment in favor of Transamerica is **AFFIRMED.**