**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0148n.06

No. 10-4096

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Feb 07, 2012**

LEONARD GREEN, Clerk

MARLON JACKSON and SYLVIA BREWTON-JACKSON,

    Plaintiffs-Appellants,

v.

STATE FARM FIRE & CASUALTY COMPANY,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

On Appeal from the United States District Court for the Southern District of Ohio

Before:    BOGGS, ROGERS, and SUTTON, Circuit Judges.

BOGGS, Circuit Judge.  A March 2007 windstorm damaged the roof of a home owned by Marlon Jackson.  Sylvia Brewton-Jackson held an insurance policy on the property.  Although Ms. Brewton-Jackson promptly reported the damage to a State-Farm agent, she did not file a formal claim.  Nearly seven months later, in October 2007, rainwater entered the home through a leak in the roof.  At this point, Jackson did file a formal claim for roof damage, which State Farm promptly paid.  Mold, however, had developed between late March and late October.  Jackson sought coverage for damage the mold had caused, even though her policy expressly stated that it did not insure against such a risk.  State Farm denied mold-damage coverage first in November 2007, again in December 2007, and a third time in September 2008.  Jackson sued in March 2009.  The

court below granted summary judgment to State Farm, holding that the statute of limitations written into Jackson's insurance policy barred her claim. Jackson appeals; we affirm.

I

Sylvia Brewton-Jackson arrived at her deceased mother's home in Glendale, Ohio late in the evening of March 31, 2007.[1] Early the next morning, she noticed that the roof had sustained wind damage. She took the preliminary steps of having a branch that lay on the house removed and getting an estimate for repairs from a roofer, then contacted her insurance agent, Ronald Robinson. Although Jackson did not file a formal insurance claim,[2] Robinson agreed to inspect the home. He did not do so. Jackson, meanwhile, returned to Atlanta, Georgia, where she had been living. She came back to Glendale in early September 2007, and lived in the house without incident for nearly two months.

---

[1] Marlon Jackson owned the property, itself, but Ms. Jackson held the insurance policy at issue here. References to "Jackson" are to Ms. Jackson.

[2] It is not clear whether Jackson had property insurance in March 2007, when she initially noticed damage to the roof. The policy in the record took effect on May 11, 2007. There is no copy of an earlier policy. The district court, however, believed that the policy in the record "was in effect at the time of the alleged property damage to Plaintiff's home," Jackson's first reaction after discovering the damage was to call Robinson, and during Jackson's deposition, State Farm's counsel asked whether Jackson "kept a copy of [her] policy in Atlanta [where she had been living] as opposed to Cincinnati," and Jackson indicated that she discussed the amount of her deductible for roof repairs with Robinson in April 2007. At this posture, we must draw all inferences in Jackson's favor. *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009). We therefore infer that she had insurance with State Farm in March 2007 that provided coverage substantially similar to the coverage that the policy in the record provides. This inference is consistent with Jackson's immediate reaction of calling Robinson, the fact that she had a copy of her State Farm policy in Atlanta, and the parties' April 2007 discussion of deductibles. It is favorable to Jackson because, of course, if State Farm owed no duty to inspect the property in April 2007, its failure to do so would be irrelevant.

On the evening of October 23, 2007, however, Jackson noticed water pouring down from the middle of the bathroom ceiling. The next day, the bathroom ceiling collapsed. *Ibid.* Jackson immediately called State Farm. Robinson and claims adjuster Jeff Lykins came to the house that afternoon. They instructed Jackson to stay with a friend that night, and at a Residence Inn starting October 25, and eventually contacted a roofing contractor. The contractor, however, did not begin repairs immediately because Jackson refused to pay her $1,000 deductible. Another contractor covered the roof with a tarp on October 27. The damage, though, was already done: Jackson saw mold in the fallen debris and in the attic.

On November 6, 2007, State Farm notified Jackson that it would provide replacement-cost coverage for the damage to her roof, estimated at $ 5929.76. Until she actually completed repairs, however, State Farm would only pay Jackson the property's actual cash value, which it determined was $ 3258.01. Once repairs were completed, Jackson could recover the remaining $ 1671.75, meaning that she would be reimbursed for the entire cost of replacement, less her thousand-dollar deductible. State Farm issued a check for $ 3258.01, which Jackson deposited.

State Farm made clear that Jackson was responsible for arranging repairs. R. 24-3 (Nov. 6, 2007 letter from Lykins to Jackson) ("To receive replacement cost benefits you must: . . . Complete the actual repair or replacement. . . . If you cannot have the repairs completed for the repair/replacement cost estimated, please contact your claim representative prior to beginning repairs."); R. 24-6 (Structural Damage Claim Policy) ("State Farm cannot authorize any contractor to proceed with work on your property. Repairs should proceed only with your authorization.").

Jackson, however, did no such thing. Instead, she used the money State Farm paid her to pay her attorney and a mold-testing company.

Also on November 6, 2007, State Farm sent Jackson a letter, explaining that it did not provide coverage for mold damage. The letter included language copied from the policy, along with a specific fungus endorsement, indicating that such damage was not covered. State Farm characterized its letter as a "denial . . . [under the] coverages of this policy," invited Jackson to present "any additional information," specified that it did "not intend . . . to waive any policy defenses," and highlighted the policy provision requiring Jackson to file suit against State Farm, if at all, "within one year after the date of loss or damage."

Jackson nevertheless obtained a bid for mold remediation, which she submitted to State Farm on November 21, 2007. On December 17, 2007, State Farm sent another letter, reciting the reason Jackson received a check for $ 3,258.01, instead of the full $ 5,929.76 repair cost of the roof, reiterating that the policy did not cover mold damage, and reminding her that she was obligated to file suit, if at all, within one year from the date of loss or damage. Again, State Farm characterized its letter as a denial of coverage, and expressly preserved its coverage defenses.

In a September 29, 2008 letter to Jackson's lawyer, State Farm denied personal-property coverage because, after re-inspection, it found that "the contents of this home are damaged due to mold." For the third time, State Farm explained in writing that Jackson's policy did not cover mold, for the third time, it included express policy language to that effect, and, for the third time, it highlighted the policy provision requiring Jackson to file suit within one year after the date of loss or damage.

Although the parties agree that the date of loss for purposes of this action is October 23, 2007, Jackson filed suit against Lykins and State Farm in Ohio state court on March 27, 2009. She sought compensation for all damage to her personal property and home, specifically alleging breach of contract, negligence, gross negligence, negligent hiring, supervision, and retention, fraud, and bad faith. State Farm removed the case to the United States District Court for the Southern District of Ohio. The parties then agreed to transfer the action to Magistrate Judge Timothy Hogan for disposition, and to dismiss all individual claims against Lykins. The magistrate judge bifurcated Jackson's bad-faith claims from her other allegations.

On March 2, 2010, State Farm moved for summary judgment, arguing first that it paid all it was obligated to pay, second that mold was not a covered risk under the policy, and finally that the one-year limitations period in the policy barred Jackson's suit altogether. It also suggested that Jackson's negligence claims failed because they were not independent of her contract claims, and that her bad-faith claims were untenable because State Farm did not breach the policy in the first instance. Jackson responded that State Farm's failure to repair the roof in 2007 constituted breach of contract. As such, she reasoned, the policy's mold exclusion and limitations period did not apply. She also argued that State Farm's material breach of contract entitled her to maintain her tort and bad-faith claims.

The magistrate judge granted State Farm's motion. He reasoned that, under Ohio law, an insurance policy may include a reasonable limitations period. The magistrate judge recognized that an insurer could waive its contractual statute-of-limitations defense by demonstrating a recognition of liability that caused the insured to delay its pursuit of legal action. He held, however,

that State Farm did nothing but deny Jackson's mold claim, and therefore did not waive the policy's limitations period. Furthermore, the magistrate judge reasoned, Jackson's tort claims all failed because there was no breach of duty, distinct from State Farm's alleged breach of contract. Finally, the magistrate judge declined to reach the bifurcated bad-faith claims, noting that they were not properly before the court.[3] Jackson appeals.

## II

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review an order granting summary judgment *de novo*, *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011), construing all evidence and drawing all inferences against the moving party. *Martin*, 561 F.3d at 443. However, "the mere existence of a scintilla of evidence in support of [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Shropshire v. Laidlaw Transit, Inc.*, 550 F.3d 570, 576 (6th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In this analysis, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Where, as here, the parties invoke diversity jurisdiction, we apply Ohio law, as determined by the Ohio Supreme Court. *Metz v. Unizan Bank*, 649 F.3d 492, 496 (6th Cir. 2011). If there is no binding Ohio Supreme Court precedent, we look to all other sources, including

---

[3] The parties ultimately dismissed the bad-faith claims by stipulation.

decisions from Ohio's lower courts. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001).

In Ohio, "[a]n insurance policy is a contract, and the relationship between the insurer and the insured is purely contractual in nature." *Johnson v. Progressive Preferred Insurance Co.*, No. 96068, 2011 WL 6314646, at *2 (Ohio App. 8 Dist. Dec. 15, 2011) (citing *Nationwide Mut. Ins. Co. v. Marsh*, 472 N.E.2d 1061, 1062 (Ohio 1984)). General contract-law principles, therefore, apply, *id.* at *3, and Ohio courts "look to the policy language and rely on the plain and ordinary meaning of the words used to ascertain the intent of the parties to the contract." *Ward v. United Foundries, Inc.*, 951 N.E.2d 770, 773 (Ohio 2011).

### III

"A contract for insurance may lawfully limit the time within which a suit may be commenced on the contract, even though this period is shorter in duration than that of the applicable statute, as long as the limitations period is not unreasonable." *Klein v. State Farm Fire & Cas.*, 250 F. App'x 150, 155 (6th Cir. 2007). A one-year limitations period is reasonable, as a matter of Ohio law. *Ibid.* (citing *Hounshell v. American States Ins. Co.*, 424 N.E.2d 311, 313 (Ohio 1981)). An insurer, though, loses the right to assert its contractual statute of limitations if, "by its acts or declarations, [it] evidences a recognition of liability under the policy, and the evidence reasonably shows that such expressed recognition of liability and offers of settlement have led the insured to delay in bringing an action on the insurance contract." *Id.* at 156 (quoting *Hounshell*, 424 N.E.2d at 314). "[T]he process of reviewing the validity of a claim [however] does not constitute waiver of a . . . limitations clause," *ibid.*, and even if the insurer did offer some sort of settlement, "[w]here

there is a specific denial of liability upon the policy, either totally or in part, there would generally be no waiver." *Hounshell*, 424 N.E.2d at 314.

There is no dispute that the date of mold damage was October 23, 2007. Thus, unless State Farm did something to show Jackson that it believed it was liable under the policy, and Jackson did not timely file suit because of that act, the last day she could have sued State Farm was October 23, 2008. Never did State Farm do anything to suggest that it would cover mold damage. Quite the contrary. It sent three separate letters, all within one year of October 23, 2007, reiterating that Jackson's policy did not cover mold damage, denying that part of her claim under the policy, and highlighting the one-year limitations period in the contract. Without question, Jackson's mold-damage claim, taken in isolation, was untimely. And the magistrate judge so held.

In response, Jackson argues that State Farm breached the contract by failing to open a claim when she first reported roof damage to Robinson. *See* Appellant's Br. at 10. State Farm, she urges, cannot escape liability by hiding behind the provisions of the very contract it breached. State Farm replies that its "failure to inspect the roof *before* the October 23, 2007 loss is irrelevant to whether State Farm misled the Jacksons *after* October 23, 2007 and caused them to delay for over a year in filing their claim." Appellee's Br. at 13–14 (emphasis in original). But Jackson and State Farm are talking past each other. The gravamen of her counter-argument is that State Farm cannot rely on provisions of the policy because it breached the contract first by failing to take action when informed of the March 2007 roof damage. Put simply, she claims that State Farm's material breach excuses her from complying with the policy's limitations period.

This argument might have some force, had Jackson fulfilled her obligations under the policy in March 2007. "Under Ohio law, a non-breaching party to a contract is excused from complying with conditions of the contract, when the party for whose benefit the condition operates has already materially breached the contract." *Brakefire, Inc. v. Overbeck*, 878 N.E.2d 84, 101 (Ohio Com. Pl. 2007) (quoting *Waste Mgt., Inc. v. Rice Danis Indus. Corp.*, 257 F. Supp. 2d 1076, 1084 (S.D. Ohio 2003)); *see also Kersh v. Montgomery Developmental Ctr., Ohio Dept. of Mental Retardation and Disabilities*, 519 N.E.2d 665, 668 (Ohio App. 1987) (explaining that, for breach to excuse performance, breach must be material); *Nious v. Griffin Constr., Inc.*, No. 03AP-980, 2004 WL 1752872, at *3 (Ohio App. 10 Dist. 2004) ("If a defendant fails to perform an essential or 'material' element of a contract, not only can it be liable for damages, but it also excuses the plaintiff from any further performance."); *Midwest Payment Systems, Inc. v. Citibank Federal Savings Bank*, 801 F. Supp. 9, 13 (S.D. Ohio 1992) ("after repudiating the contract, Citibank cannot demand now that Midwest scrupulously adhere to the terms of the contract"). These cases, of course, do not specifically involve insurance law. Ohio courts, however, apply general contract-law principles when considering insurance disputes. *Johnson*, 2011 WL 6314646, at *3. Thus, if State Farm materially breached the policy by failing to open a claim in March 2007, we would have to resolve the apparently open question whether one party's repudiation by breach excuses the other party's compliance with a contractual statute of limitations in the insurance context.

However, we need not enter that thicket. The policy required Jackson to take certain affirmative steps after loss.[4] In addition to notifying State Farm of the damage, she had to "protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property," and "submit . . . within 60 days after the loss, [a] signed, sworn proof of loss." R. 24-1 at 18 (certified copy of insurance policy). Jackson did none of these things. She did not live up to her obligations under the contract, and thus she cannot complain that State Farm failed to open a claim.

IV

Our analysis is not precisely the same as the magistrate judge's.[5] We must affirm, however, if the decision below was "correct for any reason, including a reason not considered by the lower court." *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir. 1985). We hold that, even if State Farm did have a duty to open a claim in March 2007, Jackson's failure to protect the property, her failure to make temporary repairs, and her failure to file a formal proof of loss within sixty days after March 31, 2007 preclude her from arguing that State Farm breached its own policy. As such, she cannot use the doctrine of repudiation by breach to excuse compliance with the policy's one-year limitations period. Her suit is time-barred, and the decision of the magistrate judge is AFFIRMED

---

[4] Again, it is not clear from the record which policy–if any–applied in March 2007. For the purpose of argument, we assume that the policy in the record applied.

[5] The magistrate judge correctly noted that Jackson's allegations cannot support a tort claim, since State Farm had no relevant duties outside of the contract. *See Cooper v. Roose*, 85 N.E.2d 545, 549 (Ohio 1949). We affirm that portion of the order.