[Cite as *Berk Ents., Inc. v. Polivka*, 2013-Ohio-4961.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| BERK ENTERPRISES, INC. d.b.a. BERKLEY SQUARE, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellee, | | |
| | : | **CASE NO. 2012-T-0073** |
| - vs - | | |
| | : | |
| ROBERT POLIVKA, | | |
| | : | |
| Defendant-Appellant. | | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2010 CV 03300.

Judgment:  Reversed and remanded.

*Stuart Strasfeld*, Roth, Blair, Roberts, Strasfeld & Lodge, 100 Federal Plaza East, Suite 600, Youngstown, OH  44503-1893 (For Plaintiff-Appellee).

*Thomas C. Nader*, Nader & Nader, 5000 East Market Street, Suite 33, Warren, OH 44484 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1}    This appeal is from a final judgment in a contract case before the Trumbull County Court of Common Pleas.  As its primary holding, the trial court ruled in favor of appellee, Berk Enterprises, Inc., on its claim for breach of contract.  Appellant, Robert Polivka, essentially contends that the court's decision was against the manifest weight of the evidence because appellee ("the company") failed to establish that he violated the terms of a non-competition agreement.  For the following reasons, this court concludes

that the evidence does not support the finding of a breach.

{¶2}    Berk Enterprises is an Ohio corporation with its principal place of business in Trumbull County for over thirty years.  The company is comprised of three divisions.  Under its "Berkley Square" division, it engages in the business of importing plastic cutlery for re-distribution throughout the United States.  This line of products includes items such as forks, knives, and packets containing napkins and condiments.  These products are primarily sold to individual customers or "middle-man" brokers.

{¶3}    In late 2007, appellant was hired as a sales representative for the Berkley Square division.  Eventually, he became responsible for all sales to customers along the Atlantic seaboard of the country, including the states of Florida and Texas.  As a sales representative, appellant had access to confidential information of the company, including product costs and pricing, the names and sales history of all customers, marketing plans, and financial data.

{¶4}    In joining the company, appellant did not execute an employment contract; i.e., he was an employee-at-will.  However, he voluntarily signed a confidentiality/non-solicitation/non-competition agreement.  In return for continuing employment and other benefits, appellant agreed not to engage in any of the following behavior:

{¶5}    "Employee shall not, without the prior written consent of BERK, directly or indirectly, use for his own benefit, publish or reveal to any third party any Confidential Information, unless the person or entity has a need to know the information but only to the extent necessary to affect the purposes of such use or disclosure and only upon express written authorization by Berk * * *.

{¶6}    "* * *

2

**{¶7}** "Employee shall not, directly or indirectly, copy, take, or remove from BERK'S premises (or the premises of any BERK Affiliate) any of BERK'S books, records, customer lists, software * * * or any other documents or materials or any such materials entrusted to BERK'S possession for the provision of BERK'S services regardless of ownership; provided, however, Employee may be permitted to use such BERK materials at a location other than BERK'S premises for purposes of carrying out his employment hereunder but only upon specific authorization by BERK with the express condition that Employee will not copy any Berk materials or retain any BERK material following termination * * *.

**{¶8}** "* * *

**{¶9}** "During Employee's employment by BERK and for a period of one (1) year following the date of termination of employment, neither Employee nor any Affiliate of Employee shall, as proprietor, director, officer, partner, shareholder, employee, agent, independent contractor or otherwise, for himself or on behalf of any other person or entity: (i) engage in or carry on, directly or indirectly, any activity or business as an employee, independent contractor or agent, partner or otherwise, which provides, designs, develops, markets, invests in, imports, produces or sells any products, services, or businesses, which are the same or similar to, or competitive with those designed, developed, produced, marketed, invested in, provided or sold by BERK and its Affiliates (a 'Competing Business'); (ii) have a direct or indirect interest in, or be Affiliated with, or render any services for, any person or entity engaged or carrying on, directly or indirectly, any Competing Business in the Territory; (iii) induce or attempt to induce any client, customer or supplier of BERK to reduce the business done by such

3

supplier, customer or client with BERK and/or its Affiliates; (iv) divert or attempt to divert any of the BERK'S's and/or any of its Affiliates' business to Employee or to any party on whose behalf Employee is acting, either directly or indirectly, or solicit any of BERK'S and/or any of its Affiliates' customers/suppliers with whom Employee dealt on behalf of BERK and/or any of its Affiliates during the time the Employee is employed by BERK; (v) solicit or induce any Employee, distributor, sales representative, agent or contractor of BERK to terminate his, her or its employment or other relationship with BERK or any of its Affiliates; or (vi) engage in any practice, the purpose or result of which is to evade the provisions of this Agreement or to commit any act that is detrimental to the successful continuation by BERK and its Affiliates of its/their business."

{¶10} During the first two years of his employment, appellant was paid a yearly salary and a bonus based upon his gross sales. However, in January 2010, the company instituted a "commission" plan, under which a sales representative's pay was predicated upon a percentage of the gross profit he generated for the company in a particular month. The percentage of a sales representative's monthly commission would vary according to the amount of gross profit collected from his customers. When the new commission system first took effect, appellant was obligated to sign a copy of the plan.

{¶11} The original "commission" plan remained in effect for the first three months of 2010. In April 2010, the company instituted a second "commission" plan that was slightly different than the original. Again, appellant was required to sign a copy of the second plan when it took effect.

{¶12} During the first three months of 2010, the company failed to pay appellant

4

in accordance with the original commission plan. For example, in relation to February 2010, the company did not use the correct percentage in determining the amount of the gross profit to which he was entitled. As a result, appellant did not receive the total sum he earned under the commission plan. However, he did not register a complaint about his pay while he remained an employee of the company.

{¶13} On June 16, 2010, appellant and Diane Pringey formed R & G Packaging, LLC, an Ohio corporation. Appellant first met Pringey while she was employed by Berk Enterprises as director of purchasing. Under the articles of incorporation for their new entity, appellant owned 75% of the original shares of stock, and Pringey owned the remaining 25%. As the foundation for the new business, they planned to import and sell plastic cutlery and other disposable products, similar in nature to Berkley Square's line of products.

{¶14} Approximately one month later, on July 27, 2010, appellant resigned his position with Berk Enterprises. Over the next few weeks, he either called or visited at least three distributors which had formed part of his clientele while he worked for Berk. According to appellant, these calls or visits were made simply to inform the distributors that he was no longer employed by Berk, and he did not make any sales presentation to the distributors at that time.

{¶15} In December 2010, appellant received two e-mails from Mark Williamson, a broker with whom appellant had transacted business during his employment at Berk. Due to a miscue in the e-mails' transmission, a Berk employee also received copies of the communications. In the first e-mail, Williamson asked appellant to quote him a price for certain products. According to appellant, he did not attempt to sell any products to

Williamson at that time, but only provided the requested quote so that Williamson could compare it to the quotes he had received from three other companies.

{¶16} Upon learning of the Williamson e-mails from its employee, Berk filed the underlying civil action against appellant. In its complaint, the company raised claims for breach of contract and tortuous interference with its prospective economic advantage. Essentially, the complaint asserted that, upon quitting the company, appellant violated multiple clauses of the confidentiality/non-solicitation/non-competition agreement. For its primary relief, the company sought a permanent injunction enjoining appellant from competing for the business of its customers for a period of one year.

{¶17} In answering the complaint, appellant raised one counterclaim against the company, seeking reimbursement for the compensation that was not paid to him under the original commission plan.

{¶18} A one-day bench trial went forward in February 2012. Besides calling two of its present employees as witnesses, the company called appellant to testify on cross-examination. During that testimony, appellant gave a specific description of the activity in which he engaged immediately after leaving his employment with the company.

{¶19} As part of its factual findings in the final judgment, the trial court found that the company did not compensate appellant in accordance with the original commission plan during the first quarter of 2010; hence, the court entered judgment for appellant on his sole counterclaim for the amount of $14,078.57. However, the trial court also found that appellant violated provisions of the confidentiality/non-solicitation/non-competition agreement by contacting Berkley Square customers immediately after forming the new business and terminating his employment at Berk. Moreover, the court found that the

6

violation was ongoing for five months until the company initiated the litigation. Thus, the final judgment enjoined appellant from taking any new steps to compete with Berk for a one-year period starting from the date of the decision. Finally, the court ordered that the company would not be liable to pay appellant for the unpaid compensation until the one-year no-compete period had elapsed.

{¶20} In appealing the determination concerning the breach of non-competition term, appellant asserts six assignments of error for review:

{¶21} "[1.] The trial court erred by enforcing a covenant not to compete when the employer had materially breached the employment agreement.

{¶22} "[2.] The trial court's finding that [appellant] violated the restrictive covenant was against the manifest weight of the evidence.

{¶23} "[3.] The trial court erred in enforcing the covenant not to compete even though there was a lack of consideration.

{¶24} "[4.] The trial court erred in enforcing the covenant not to compete for one year from the date of the judgment entry.

{¶25} "[5.] The trial court erred in conditioning the judgment in favor of [appellant] for unpaid compensation upon compliance with the one year compliance with the covenant not to compete.

{¶26} "[6.] The trial court erred in ordering interest to not accrue until one year after the date of the judgment."

{¶27} Under his first assignment, appellant essentially argues that the trial court should have never addressed the issue of whether he violated the "no-compete" aspect of the confidentiality/non-solicitation/non-competition agreement. Specifically, he states

7

that the trial court should have concluded that the non-competition covenant could not be enforced against him after the company failed to fully compensate him for the work he performed during the first three months of 2010. According to him, the failure to pay was a material breach which foreclosed the company's ability to enforce any term of the confidentiality/non-solicitation/non-competition agreement.

{¶28} In regard to the enforcement of a non-competition clause, Ohio case law generally excuses a non-breaching party from complying with such a clause when the party attempting to enforce the clause has already committed a material breach of the contract. *Jackson v. State Farm Fire & Cas. Co.*, 461 Fed. Appx. 422, 2012 U.S. App. LEXIS 2417, *13 (6th Cir.2012). As to what constitutes a material breach of a contract, Ohio courts have considered the following factors:

{¶29} "(1) the extent to which the injured party will be deprived of the benefit that he reasonably expected, (2) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (3) the extent to which the party failing to perform or to offer to perform will suffer forfeiture, (4) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances, and (5) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." *Brakefire, Inc. v. Overbeck*, 144 Ohio Misc.2d 35, 2007-Ohio-6464, ¶44.

{¶30} In claiming that the company's failure to fully pay him should be viewed as a material breach of the terms of his employment, appellant relies heavily upon the holding in *Brakefire*. However, even though the trial court in *Brakefire* held that the

failure to comply with a compensation term constituted a material breach, that decision was primarily predicated upon the fact that the employer changed the rate of the employees' wages without their permission when they had a justified expectation their consent was needed to alter the term. *Id.* at ¶45. Here, appellant never asserted the company acted improperly in changing the means of calculating his compensation under the initial commission plan of January 2010. There is no evidence that appellant objected to the new compensation plan, or challenged the company's ability to enforce it.

{¶31} Instead, the evidence in this case supports the conclusion that the failure to fully compensate appellant for his work was due solely to the company's basic error in applying the new formula. For example, the evidence tended to show that the wrong percentage was used in determining how much of the gross profits for February 2010 should be paid to appellant. Accordingly, there is nothing to indicate that the company acted in bad faith in failing to fully compensate appellant while he was still an employee. As to this point, there is no dispute that appellant did not raise any objection concerning the extent of his compensation until after the company instituted the action against him.

{¶32} Taken as a whole, this was not a situation in which the company's officers purposely tried to withhold compensation from appellant when they knew that he was entitled to it under the original commission plan. Furthermore, the company's payment of the amount owed, plus interest, will be sufficient to place appellant in the position he would have been in if the correct compensation had been paid timely in 2010. Under such circumstances, the failure to pay full compensation immediately did not constitute a material breach which would excuse appellant from complying with the terms of the

9

confidentiality/non-solicitation/non-competition agreement.  For this reason, appellant's first assignment is not well-taken.

{¶33}  Under his second assignment, appellant challenges the trial court's finding that, during the one-year period after he left his position with the company, he engaged in behavior which constituted a violation of the non-competition covenant.  Although his argument is couched in terms of manifest weight of the evidence, appellant essentially maintains that the actions he took after June 2010, i.e., forming a new "plastic cutlery" business and contacting three former clients who were still customers of the company, was not sufficient to show that he was competing with his prior employer.

{¶34}  In concluding that appellant had breached the non-competition covenant, the trial court predicated its analysis primarily upon the finding that, even if appellant did not make any actual sales of plastic cutlery during the five months following his last day with the company, he was taking steps to ensure that his new business would be able to begin to make such sales as soon as the one-year period ended.  During his testimony on cross-examination, appellant admitted four points which readily supported the court's underlying finding: (1) appellant and his partner created their new corporation in June 2010, even before appellant quit his job; (2) the new business would sell the same line of products as the "Berkley Square" division of Berk; (3) immediately after leaving Berk, appellant telephoned and/or visited three Berkley Square customers to inform them of his decision to quit; and (4) the new business was already compiling an inventory of the plastic cutlery by importing it from China.  In light of the foregoing, there was no dispute that appellant intended for his business to begin competing with his former employer the first day after the non-compete period was over.

10

{¶35} Therefore, the issue before the trial court was whether the terms of the non-competition covenant forbid appellant from taking initial steps to form his new corporation, without actually engaging in any business. The resolution of this question turns upon the exact wording of the non-competition covenant. In interpreting the terms of such a covenant, Ohio courts have generally applied the same rules of construction as are used in construing any contractual language. *See, e.g., Case v. Case*, 12th Dist. Butler No. CA2001-04-075, 2001 Ohio App. LEXIS 8678, *12 (Oct. 29, 2001). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the contract, and common words will be given their ordinary meaning unless manifest absurdity results or some other meaning is clearly evidenced from the face or overall content of the instrument." *Id.* citing *Foster Wheeler Envirsponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361 (1997).

{¶36} The non-competition covenant delineates six categories of behavior which an employee is not allowed to do for one year following the last day of his employment. The first category is entitled a "Competing Business," and contains the broadest language of any of the six categories. Pursuant to this category, an employee is prohibited from engaging in, "directly or indirectly, any activity or business as * * * [a] partner or otherwise, which provides, designs, develops, markets, invests in, imports, produces or sells any products * * * which are the same or similar to, or competitive with those * * * provided or sold by Berk and its Affiliates * * *."

{¶37} As the quoted language readily demonstrates, the first category of the non-competition covenant does not have any express reference to acts pertaining to the formation of a competing business. Furthermore, it must be noted that the entire

provision is stated in the present tense. This implies that the first category was intended to only prohibit activities which would have an immediate adverse effect upon the extent or volume of Berk's business. This is in contrast to activities which, although intended to decrease Berk's volume in the future, will not have any adverse effect upon its sales during the one-year non-compete period.

{¶38} As part of its litany of prohibited behavior, the first category refers to some activities which can occur during the formation or start-up period for a business. For example, the act of investing funds in a corporation can take place before the entity begins to sell its products to the public. Nevertheless, this court would reiterate that the name given to the first category under the non-competition covenant is a "competing" business. In light of the nomenclature and the general wording of the provision, the first category was obviously intended to apply to activities performed in regard to an ongoing business that is making actual sales to customers. Thus, the act of investing in a new entity that has not made any sales would not be covered by the first category.

{¶39} In presenting its case at trial, the company, Berk, did not introduce any evidence showing that the wording of the non-competition covenant had resulted from negotiations between the company and appellant. Instead, the company's limited evidence only tended to show that appellant was required to sign the standard form of the confidentiality/non-solicitation/non competition agreement, as written by Berk, near the beginning of his employment. Given these circumstances, the lack of any express reference in the first category to the mere formation of new business must be construed against the company. Accordingly, this court concludes that, so long as appellant did not try to actually market and sell any plastic cutlery during the one-year period, the first

category of the non-competition covenant did not forbid him from taking steps to form his new corporation.

{¶40} The foregoing analysis would also apply to the other five categories in the covenant. Again, none of the remaining categories contains an express reference to the formation of a new business or associated activities. Rather, the provisions only refer to actions which would cause immediate competition for the company's products, as compared to actions which will not result in sales of plastic cutlery until after the one-year period has ended. Therefore, appellant's actions in assisting in the creation of the new "plastic cutlery" business did not violate the non-competition covenant.

{¶41} In regard specifically to the calls/visits appellant made to three Berk customers immediately after his resignation, this court would note that the third category of the covenant prohibits any attempt to induce any client or customer to reduce the amount of its business with the company. Obviously, if appellant had tried to induce the three customers to immediately buy products from him or to otherwise immediately buy fewer products from Berk, a violation would have been shown. However, there was no such evidence. At best, the evidence only shows that appellant informed the customers that he was no longer working for Berk and that he would be forming his own company.

{¶42} As to appellant's collection of an inventory of plastic cutlery during the one-year period, Berk failed to present any evidence establishing that he in fact sold any of the products prior to the end of the non-compete period. Without other evidence, appellant's mere collection of an inventory, to be sold at a future date, was not sufficient to demonstrate a violation of the non-competition covenant.

{¶43} In attempting to prove that appellant did take steps to actually sell his

13

products during the one-year period, the company, Berk, introduced into evidence copies of two e-mails that were sent to appellant by Mark Williamson, a manufacturing representative with whom appellant had transacted business while working for Berkley Square. As noted above, due to problem in the transmission of the e-mails, a present company employee also received the e-mails when they were sent in December 2010. Based upon the e-mails, the trial court found that appellant was engaging in the acts of soliciting and obtaining price quotations for certain products.

{¶44} The submitted evidence does not support the trial court's finding on this point. First, as part of his testimony concerning the e-mails, appellant stated that Williamson actually asked him to provide a quote for products that appellant's business would sell in the future. According to appellant, Williamson made the "quote" request to him because appellant's business partner had contacts with manufacturers in China. In addition, appellant testified that, even though he did provide the quote, it was not for the purpose of soliciting business, but only to assist Williamson in determining whether the other quotes he had for the products were reasonable.

{¶45} More importantly, even if the trial court concluded that appellant's testimony on the e-mails was not believable, there was nothing in the language of the e-mails to indicate that appellant was violating the non-competition covenant. As to this point, it is important to note that the e-mails only contain statements from Williamson to appellant; there is no indication as to what appellant wrote to Williamson in response. In the first e-mail, Williamson states that a shipment will soon arrive in "Mia port," and that he needs to know "cost" plus delivery as soon as possible. Given that Williamson is asking for a quote from appellant, the wording of the e-mail is consistent with appellant's

14

testimony. In the second e-mail, Williamson provides information regarding his costs in dealing with a specific manufacturer. He then states he hopes the information will help appellant in dealing with his manufacturer. Therefore, the second e-mail confirms that appellant is taking step to develop an inventory of products, but does not show that he has taken the next step and actually sold products to customers.

{¶46} Taken as a whole, the evidence presented by Berk, as the plaintiff in the underlying action, did not establish that appellant had actually started to compete with the company by trying to sell plastic cutlery to the same type of customers. Rather, the company was only able to prove that he was merely preparing to compete for the same business after the one-year period had elapsed. Since mere preparation did not conflict with any express provision of the non-competition covenant, the trial court erred in finding that appellant had violated the covenant. For this reason, appellant's second assignment has merit.

{¶47} Under his next assignment, appellant maintains that the non-competition provision of the confidentiality/non-solicitation/non-competition agreement should have been declared unenforceable due to a lack of consideration. As to this point, he notes that, on both occasions in which the company amended its basic policy for determining the amount of his compensation, he was never required to execute a new copy of the confidentiality/non-solicitation/non-competition agreement.

{¶48} In asserting the foregoing argument, appellant appears to assume that the two compensation plans he signed in 2010 constituted his entire employment contract with the company. However, the unrefuted testimony of the company's chief financial officer demonstrated that appellant was an employee-at-will during the entire term of his

15

employment. In addressing the issue of consideration for a non-competition covenant in the context of an at-will employment relationship, the Supreme Court of Ohio has stated:

{¶49} "At-will employment is contractual in nature. * * * In such a relationship, the employee agrees to perform work under the direction and control of the employer, and the employer agrees to pay the employee at an agreed rate. Moreover, either an employer or an employee in a pure at-will employment relationship may legally terminate the employment relationship at any time and for any reason. * * * In the event that an at-will employee quits or is fired, he or she provides no further services for the employer and is generally entitled only to wages and benefits already earned.

{¶50} "* * *

{¶51} "The presentation of a noncompetition agreement by an employer to an at-will employee is, in effect, a proposal to renegotiate the terms of the parties' at-will employment. Where an employer makes such a proposal by presenting his employee with a noncompetition agreement and the employee assents to it, thereby accepting continuing employment on new terms, consideration supporting the noncompetition agreement exists. The employee's assent to the agreement is given in exchange for forbearance on the part of the employer from terminating the employee.

{¶52} "We therefore hold that consideration exists to support a noncompetition agreement when, in exchange for the assent of an at-will employee to a proffered noncompetition agreement, the employer continues an at-will employment relationship that could legally be terminated without cause." (Citations omitted.) *Lake Land Employment Grp. of Akron, LLC v. Columber*, 101 Ohio St.3d 242, 2004-Ohio-786, ¶17-

{¶53} Pursuant to the foregoing Supreme Court authority, the consideration for a non-competition covenant is viewed as separate from any compensation term in an at-will employment relationship. That is, the employee's continuing employment is always the consideration the employer gives in exchange for the acceptance of the covenant not to compete. For this reason, it was simply unnecessary for the company in our case to have appellant execute a new copy of non-competition covenant each instance the compensation scheme was altered. Accordingly, to the extent that the company gave proper consideration in exchange for appellant's assent to the confidentiality/non-solicitation/non-competition agreement, his third assignment does not have merit.

{¶54} Under his next two assignments, appellant challenges two orders in the trial court's final judgment which stemmed from the determination that he breached the non-competition covenant. First, under his fourth assignment, he contends that the trial court erred in ordering that the running of the one-year non-compete period must begin anew as of the date of the judgment. Second, under the fifth assignment, he argues that the trial court erred in postponing the company's payment of the unpaid 2010 sales commissions until after the one-year non-compete period was completed.

{¶55} Given our disposition of appellant's second assignment, his fourth assignment is moot and need not be addressed under App.R. 12(A)(1)(c). The record shows that no aspect of the appealed judgment was stayed while this appeal remained pending. Hence, even if the running of non-compete period was stayed during the trial proceedings, appellant has already completed the remaining seven months of the non-compete period. Furthermore, our disposition of the second assignment dictates that

there should have been no delay in appellant's recovery of the unpaid commissions. As part of the new judgment issued upon remand, the trial court must order the immediate payment of the amount owed by the company to appellant. To this limited extent, the fifth assignment is well-taken.

{¶56} Under his final assignment, appellant maintains that the trial court erred in determining the date upon which interest on his judgment for the unpaid 2010 compensation should start to accrue. In rendering judgment in favor of appellant on his counterclaim, the court held that interest on the $14,078.57 would not begin to accrue until after the one-year non-compete period elapsed. Appellant not only contends that the accruement of post-judgment interest should have begun on the date of the court's final judgment, but that he was also entitled to prejudgment interest.

{¶57} As to the payment of post-judgment interest, in light of our holding under appellant's second assignment, it is no longer necessary to review the merits of the trial court's decision to delay the payment of post-judgment interest until after the one-year non-compete was over. Since the company did not prove that appellant had violated the non-competition covenant during the first months after his resignation, there was no need to delay payment on the "compensation" judgment in order to ensure his future compliance. Accordingly, pursuant to R.C. 1343.03(B), appellant was entitled to post-judgment interest from the date the trial court's final judgment was issued.

{¶58} In relation to the payment of prejudgment interest, R.C. 1343.03(A) states that "when money becomes due and payable upon any bond, bill, note, and other instrument of writing * * *, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, * * *." Pursuant to this

statutory provision, "[o]nce a plaintiff prevails on a contract claim, the trial court must award the party prejudgment interest. * * * The only matter within the court's discretion is the determination of the starting date upon which to begin calculating the prejudgment interest." (Citations omitted.) *Desai v. Franklin*, 177 Ohio App.3d 679, 2008-Ohio-3957, ¶31.

{¶59} In this case, appellant's counterclaim for the unpaid compensation was based upon the written commission plans which he was required to sign during the first quarter of 2010; as a result, he was entitled under R.C. 1343.03(A) to an award of prejudgment interest on the money judgment in his favor. Moreover, there is no dispute under the facts of this case that appellant earned all of the unpaid compensation in the first quarter of 2010; thus, since the commissions in question should have been paid by April 1, 2010, and appellant did not commit any act warrant any delay in the accruing of interest, he is entitled to prejudgment interest from that date.

{¶60} In light of our holding that appellant never violated the terms of the non-competition covenant, the company is statutorily obligated to pay both prejudgment and post-judgment interest on the "unpaid compensation" judgment. Appellant's sixth assignment is well-taken.

{¶61} Consistent with the foregoing analysis, appellant's second, fifth and sixth assignments have merit. Therefore, it is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas is reversed, and the case is hereby remanded for further proceedings consistent with this opinion. Specifically, the trial court shall issue a new final entry in which judgment shall be entered in favor of defendant-appellant, Robert Polivka, on the entire complaint of plaintiff-appellee, Berk

19

Enterprises, Inc. In addition, the new final entry shall contain an appropriate order for the payment of both prejudgment and post-judgment interest on Polivka's counterclaim for unpaid compensation.

DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

20